[No. F006157. Fifth Dist. Dec. 18, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN WOODROW BURCH, Defendant and Appellant.

Counsel

Brian C. Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and J. Robert Jibson, Deputy Attorney General, for Plaintiff and Respondent.

Opinion

MARTIN, J.—Appellant, Kevin Woodrow Burch, was charged by information with possession of methamphetamine (Health & Saf. Code, § 11377), a felony (count I); possession of a hypodermic needle and syringe (Bus. & Prof. Code, § 4143, subd. (a)), a misdemeanor (count II); driving with a suspended or revoked driver's license (Veh. Code, § 14601.1., subd. (a)), a misdemeanor (count III); and driving an unregistered vehicle (Veh. Code, § 4000, subd. (a)), an infraction (count IV). Count I also alleged appellant had suffered a prior robbery conviction within the meaning of Penal Code section 667.5, subdivision (b).

Appellant's Penal Code section 1538.5 motion to suppress evidence seized at the time of appellant's detention was denied by the trial court. Thereafter, appellant pleaded guilty to counts I, II and III and admitted the prior conviction. Count IV was dismissed. Appellant was placed on probation and ordered to serve one year in the county jail and pay a restitution fine of $150. He filed a timely notice of appeal.

FACTS[1]

On December 22, 1984, at approximately 4:30 a.m., Modesto Police Officer Thomas Allen, while on patrol, pulled over a gray Chevrolet for an expired registration tag and inoperative taillights. Appellant properly parked the vehicle at the side of the road and informed Allen his driver's license was suspended and presented a Merchant Marine identification card.

Allen verified by way of radio communication that appellant's driver's license was suspended. Allen testifed appellant appeared nervous, beads of sweat were forming on his forehead and he stammered. Allen noticed a knife sheath on appellant and asked him if he was carrying a knife. Appellant responded affirmatively and Allen patted him down finding several screwdrivers, the knife and a glass doorknob.

Officer Allen observed in plain view within the rear passenger area of the car several carburetors, numerous tools, gas cans, funnels and other items. Appellant's hands appeared very greasy, as though he had been "working on

---

[1]The statement of facts is taken from the preliminary hearing transcript.

a car." The officer had received recent information of a "massive rash" of nighttime thefts of automobile parts in the area. There had been several such thefts reported within the preceding 24 hours.

Allen testified he intended to cite appellant for the suspended license and therefore, pursuant to a requirement by the City of Modesto, began to inventory the property within the vehicle prior to impounding it. He also called for a tow truck to tow the vehicle. Since some of the tools within the car "trailed" under the seat, the officer looked underneath the seat to determine if additional tools were there. At that point, he saw several hypodermic needles and syringes lying directly under the seat. The needles "trailed up to" a brown bag, from which one hypodermic needle was actually sticking out. The officer retrieved the bag, opened it and discovered three small bindles containing a white, powdery substance.[2] Appellant was then arrested for possession of a controlled substance.

In view of the felony arrest, no citation was given to appellant and the car was never towed. After seizure of the hypodermic needles and syringes and suspected controlled substance, the car was locked and left parked as it was on the side of the road.

Officer Allen testified he usually had cars towed when he cited the driver for a violation of Vehicle Code section 14601 to prevent the cited driver from simply getting back into the vehicle and driving away. Allen did not cause the Chevrolet in question to be towed because no citation for the Vehicle Code section 14601 violation was then issued; appellant was arrested and subsequently charged in the information with one count of violating Vehicle Code section 14601. Officer Allen had begun an inventory list but testified he probably threw it away after finding the needles and methamphetamine.

### DISCUSSION

Appellant complains the trial court erroneously denied his suppression motion because the taking of the inventory of his car was an "unauthorized, unreasonable and unwarranted" search. Appellant claims

---

[2]Counsel entered a stipulation that if a Department of Justice expert were called, she would testify the bindles contained a usable amount of methamphetamine.

Vehicle Code section 22651, subdivision (p),[3] was used only as a "ruse" to conduct an investigatory search of the automobile and there was no need to take an inventory because the officer had no reason to believe anything of value was in the car and less intrusive alternative means were available to take care of the car and its contents, namely, to lock it and allow appellant to notify someone to pick it up.

To support his argument, appellant relies primarily on *Mozzetti* v. *Superior Court* (1971) 4 Cal.3d 699 [94 Cal.Rptr. 412, 484 P.2d 84]. In that case, Mozzetti, while driving her automobile, was injured in an accident and taken to a hospital. Before removing her automobile from the highway and storing it, the police took a routine inventory of its contents, opened a closed suitcase and seized marijuana found inside. Mozzetti was charged with possession of marijuana and her motion to suppress the evidence was denied. The Supreme Court granted a writ of mandamus to compel the trial court to suppress the evidence, pointing out that the Fourth Amendment applies to such routine inventory taking even though the police are not searching for evidence of crime. The court noted that although the police, in making such an inventory, are entitled to take note of personal property in plain sight and may inventory any objects visible without probing, the opening of the suitcase was not justified under the circumstances and violated Fourth Amendment requirements, with the result that the marijuana constituted evidence taken in an illegal search. (*Id.,* at pp. 707-711.)

 Prior to the enactment of Proposition 8,[4] the provisions of article I, section 13 of our California Constitution afforded an independent ground for excluding illegally seized evidence. (*People* v. *Kershaw* (1983) 147 Cal.App.3d 750, 754, fn. 2 [195 Cal.Rptr. 311].) However, Proposition 8

---

[3]Vehicle Code section 22651, subdivision (p) provides in pertinent part: "Any peace officer . . . may remove a vehicle from a highway located within the territorial limits in which the officer of employee may act under any of the following circumstances:

" . . . . . . . . . . . . . . . .

"(p) When the peace officer issues the driver of a vehicle a notice to appear for a violation of Section . . . 14601 . . . and there is no passenger in the vehicle who has a valid driver's license and authorization to operate the vehicle. Any vehicle so removed from the highway shall not be released to the registered owner or his or her agent except upon presentation of the registered owner's or his or her agent's currently valid driver's license to operate the vehicle or upon order of a court."

[4]California Constitution, article I, section 28, subdivision (d) reads as follows: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press."

amended the state Constitution to provide that "relevant evidence shall not be excluded in any criminal proceeding." Thus, there is no longer an "independent state ground" for exclusion of evidence in a criminal proceeding. (*In re Lance W.* (1985) 37 Cal.3d 873, 885-889 [210 Cal. Rptr. 631, 694 P.2d 744].) Such exclusion must be mandated by the federal Constitution. (*Ibid.*) ■ As all occurrences pertinent in this case occurred subsequent to the passage of Proposition 8, we must determine whether the evidence in question would be admissible under the federal rules for exclusion of evidence. (*People* v. *Love* (1985) 168 Cal.App.3d 104, 107 [214 Cal.Rptr. 483].)

■ Federal law has frequently upheld a noninvestigatory inventory of articles remaining in an impounded vehicle. The United States Supreme Court has traditionally drawn a distinction between automobiles and homes or offices in relation to the Fourth Amendment. Although automobiles are "effects" and thus within the reach of the Fourth Amendment, warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not. (*South Dakota* v. *Opperman* (1976) 428 U.S. 364, 367 [49 L.Ed.2d 1000, 1004, 96 S.Ct. 3092].) The court has upheld warrantless searches where no immediate danger was presented that the car would be removed from the jurisdiction. The high court has reasoned that less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. (*Ibid.*) "The expectation of privacy as to automobiles is further diminished by the obviously public nature of automobile travel. Only two Terms ago, the Court noted: 'One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . It travels public thoroughfares where both its occupants and its contents are in plain view.' *Cardwell* v. *Lewis* [(1974) 417 U.S. 583, 590 (41 L.Ed.2d 325, 335, 94 S.Ct. 2464)].

"In the interests of public safety and as part of what the Court has called 'community caretaking functions,' [citation] automobiles are frequently taken into police custody. . . . The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

"When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody [citation]; the protection of the police against claims or disputes over lost or stolen prop-

erty [citation]; and the protection of the police from potential danger [citation]. The practice has been viewed as essential to respond to incidents of theft or vandalism. [Citations.]" (*Id.*, at pp. 368-369 [49 L.Ed.2d at p. 1005].)

In *Opperman,* an automobile was impounded by the police for overtime parking in a restricted zone. The car was taken to the city impound lot. From the outside of the car, a police officer observed a watch on the dashboard and other items of personal property in plain view. The officer then ordered the car unlocked and the contents of the car inventoried pursuant to police regulation. (*Id.*, at p. 380, fn. 6 [49 L.Ed.2d at pp. 1011-1012] [Powell, J., conc.].) The court held the inventory search to be reasonable under the Fourth Amendment. The court noted that the practice followed by that particular police department in inventorying and safeguarding the contents of impounded cars was standard police procedure generally followed throughout the country. (*Id.*, at p. 376 [49 L.Ed.2d at p. 1009].)

In *Cooper* v. *California* (1967) 386 U.S. 58 [17 L.Ed.2d 730, 87 S.Ct. 788], the police impounded the car of a suspected heroin dealer pursuant to a state law requiring the forfeiture of a vehicle used for the unlawful sale or transportation of narcotics. The court upheld a warrantless inventory search of the car, including an examination of the glove compartment, even though the car was being held in connection with criminal activity for which an arrest had been made and the search was not conducted until a week after the car was impounded. The court found that such a search was reasonable and, therefore, not violative of the Fourth Amendment, despite the fact no warrant had issued and probable cause to search had not been established. (*Id.*, at pp. 61-62 [17 L.Ed.2d at pp. 733-734].)

The decision in *Cooper* was premised on the theory that the police had a possessory interest in the car based on the state forfeiture statute requiring them to retain it some four months until the forfeiture sale. (*Ibid.; South Dakota* v. *Opperman, supra,* 428 U.S. at p. 377, fn. 2 [49 L.Ed.2d at p. 1010] [Powell, J., conc.].) In such circumstances, the court in *Cooper* noted that: "It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it." (*Cooper* v. *California, supra,* 386 U.S. at pp. 61-62 [17 L.Ed.2d at p. 733].)

In *Harris* v. *United States* (1968) 390 U.S. 234 [19 L.Ed.2d 1067, 88 S.Ct. 992], the petitioner's car was impounded after he was arrested on a robbery

charge. The court upheld the introduction of evidence seized by an officer who, after entering the car to conduct an inventory search and to secure its doors and windows against the rain, observed a car registration card lying on the metal stripping of the car. The seizure was validated because the discovery of the card was not the result of a search of the car, but due to measures taken to protect the car while it was in police custody. (*Id.,* at p. 236 [19 L.Ed.2d at p. 1069].)

*Cady* v. *Dombrowski* (1973) 413 U.S. 433 [37 L.Ed.2d 706, 93 S.Ct. 2523] involved a warrantless search in the interest of public safety pursuant to law enforcement's "community caretaking functions." (*Id.,* at p. 441 [37 L.Ed.2d at p. 715].) The police arrested an off-duty policeman for drunken driving after a late-night accident. A search of the car, after it was towed to a private garage, was conducted pursuant to standard police procedure to discover the police service revolver which the arresting officers thought the driver was required to carry. The search was not carried out for the purpose of discovering criminal evidence. However, in the process, police uncovered blood-stained items in the trunk of the car which led to Dombrowski's conviction for murder. Relying on *Harris* and *Cooper,* the court held the warrantless intrusion was justified by the "concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle." (*Id.,* at p. 447 [37 L.Ed.2d at p. 718].)

In *United States* v. *Jamerson* (9th Cir. 1977) 549 F.2d 1263, defendant was convicted of the knowing transportation of a stolen vehicle in interstate commerce in violation of the Dyer Act. On the basis of information that the vehicle in question had been stolen, defendant was arrested and immediately thereafter, at the scene of the arrest, the officers performed an inventory of the contents of the vehicle. The purpose of the inventory was to make a record of the vehicle's contents in order to protect the police department in the event of a claim regarding lost or stolen items. (*Id.,* at p. 1265.)

Some hours later, the van's legal owner requested its release. It was agreed the van would be released to its owner after removal of all the property within the van. A deputy then entered the vehicle to remove the inventoried contents. At that time he noticed a piece of newspaper sticking out from under a mat behind the driver's seat. He removed the mat and discovered, wrapped up in the paper, two stolen Canadian license plates and several pieces of Canadian identification. The license plates and the identification were subsequently introduced into evidence against defendant over his objection that these items had been seized illegally in violation of his Fourth Amendment rights. (*Ibid.*) The Ninth Circuit Court of Appeals held the

"search" was "plainly a routine inventory search made prior to releasing the vehicle to its proper owner." (*Id.,* at p. 1271.) The police were " 'indisputably engaged in a caretaking search of a lawfully impounded automobile.' " (*Ibid.*) The court determined there was no suggestion " 'the standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive.' " (*Ibid.,* quoting *South Dakota* v. *Opperman, supra,* 428 U.S. at pp. 375, 376 [49 L.Ed.2d at p. 1009].) Thus, the Ninth Circuit affirmed the district court's denial of the motion to suppress the evidence.

The same analysis applies in the instant case. The officer had the option under Vehicle Code section 22651, upon citing the driver, to tow the vehicle. The officer testified it was his regular procedure upon citing a driver for a violation of Vehicle Code section 14601 to have the car towed so as to prevent the driver from simply getting back into his vehicle and driving away. It was his intent to cite the driver for a Vehicle Code section 14601 violation; he called for a tow truck to tow the vehicle and commenced a routine inventory search. ■■■ ■ The officer observed several carburetors in the back seat of the automobile.[5] The carburetors being items of value, and in plain sight, were the proper subject of inventorying. As these parts and tools "trailed" under the seat, the officer reasonably looked under the seat to see if any other items of value were located there. Upon finding the methamphetamine, the officer no longer intended to cite appellant, but arrested him instead. Thus, there was no cause to remove the vehicle to prevent appellant from driving it away. Therefore, the officer locked the car and left it as it was.

It is the inventorying practice and not the impounding practice that, if routinely followed and supported by proper noninvestigatory purposes, renders the inventory search reasonable under *Opperman. (United States* v. *Hellman* (9th Cir. 1977) 556 F.2d 442, 444.)

Contrary to appellant's contentions, there is no credible evidence the taking of an inventory was simply a "ruse" to justify an investigatory search for criminal evidence. As the United States Supreme Court stated in *Opperman,* an inventory serves to protect the owner's property while it remains in police custody, protects the police against claims or disputes over lost or stolen property, and protects the police from potential danger. (*South Dakota* v. *Opperman, supra,* 428 U.S. at p. 369 [49 L.Ed.2d at p. 1005].)

---

[5]This, in light of the officer's knowledge of recent thefts of automobile parts, also raises the question of whether the officer had probable cause to believe these parts constituted contraband in the automobile in which case officers may conduct warrantless searches of automobiles, even after a vehicle has been impounded. (*Michigan* v. *Thomas* (1982) 458 U.S. 259, 261 [73 L.Ed.2d 750, 753, 102 S.Ct. 3079, 3080].)

The judgment is affirmed.

Franson, Acting P. J., and Woolpert, J., concurred.