[No. F015311. Fifth Dist. Sept. 2, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES EDWARD BENITES, Defendant and Appellant.

**COUNSEL**

Eileen S. Kotler and Gordon S. Brownell, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, J. Robert Jibson and William G. Prahl, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BIANCHI, J.*—**

### INTRODUCTION

Appellant, James Edward Benites, was arrested with one Robert Dean Stanfill on various charges including receiving stolen property, possession of burglary tools, possession of a loaded firearm in public and being an ex-felon owning a concealable firearm. The property was discovered after a routine traffic stop by a Tuolumne County deputy sheriff which revealed that appellant and his passenger both had suspended licenses. The officer decided to impound the van and conducted an inventory search, which resulted in the discovery of a loaded shotgun and other evidence. Appellant moved to suppress the evidence, arguing that the officer's decision to impound the vehicle was improper and the evidence seized during the inventory search was fruits of that improper search. The superior court denied the suppression motion, and appellant filed a petition for writ of mandate with this court. In the petition, appellant argued that the officer improperly decided to impound the vehicle, there were no local procedures on impounding and conducting inventory searches, and the officer relied on the impoundment decision as a ruse to search his van. This court denied the petition without comment. (*Benites* v. *Superior Court* (Apr. 14, 1989) F011882 [nonpub. opn.].) Appellant was subsequently convicted of several counts of receiving stolen property, being an ex-felon in possession of firearms, possession of burglary tools and possession of narcotics.

■ This appeal is now taken after appellant's conviction following a jury trial, and is properly before the court because the prior writ was summarily denied. (*People* v. *Allison* (1988) 202 Cal.App.3d 1084, 1088 [249 Cal.Rptr. 218].)

We are not here concerned with the various pleadings and amendments to the information since the appeal is limited to the superior court's denial of the suppression motion. As such, the facts are limited to those adduced at the suppression hearing.

*Retired judge of the Kern Superior Court sitting under assignment by the Chairperson of the Judicial Council.

*Suppression Hearing Evidence.*

On February 8, 1988, at approximately 1:40 a.m., Tuolumne County Deputy Sheriff John Holland was patrolling westbound on Highway 108 a few miles west of Jamestown when he saw a red van towing a U-Haul trailer. The license plate light on the trailer was out and the license number could not be read. Holland activated the squad car's red light and pulled the van over. The traffic stop occurred approximately three miles west of Jamestown in an area without any street lights, residences or businesses. As soon as the van stopped, Holland directed his lights to the trailer license plate and immediately checked the van's status by radio.

The driver of the van, appellant Benites, stepped out and met Deputy Holland at the squad car. Holland asked for appellant's driver's license, and appellant handed it over and asked the reason for the traffic stop. Holland told him about the defective lights on the trailer, and appellant replied that he was en route to Modesto to return the U-Haul. Holland then asked for the vehicle registration, and appellant stated that it was inside the van. Holland asked if anyone was with him, and appellant said that a friend was sleeping inside. Holland testified that appellant was calm and soft spoken during the conversation.

Appellant and Holland walked to the passenger door of the van and appellant knocked on the door and called out, " 'Bob, this cop wants the registration.' " Robert Stanfill emerged from the rear area of the van, opened the glove box, pulled out the registration, rolled down the window, and handed it to Holland. Stanfill was very hostile and used "abusive, obscene language." Holland asked for his name and date of birth, and Stanfill complied. Holland and appellant then returned to the squad car.

Holland requested a driver's license check by radio on both appellant and Stanfill. While Holland waited for the response, he requested a backup unit. Holland also started to write citations for the license plate light and the failure to have proof of insurance for the van. Deputy Phelps arrived as backup while Holland was writing the citation and Department of Motor Vehicles (DMV) warning.

Holland testified that he did not recognize appellant's name, except for the fact that it was identical to that of the Coors distributorship in Soulsbyville. Holland testified that he had never seen the van prior to the traffic stop. Holland testified that appellant asked, " 'Do you know who I am?' And I says, 'No.' [¶] And he said, 'Well, you've heard of the beer distributorship?' And I said, 'Yes,' and so that's—no, as far as it went, so I assumed he was

the owner of the Benites Distributors." Holland testified that he was not aware that appellant was a possible suspect in some burglaries.

As Holland wrote the citation, he received information over the radio that appellant's license was suspended and "verbal personal service was needed." Appellant knew that his license was suspended. Holland produced a "DMV form" for appellant to read and sign, which acknowledged that he had been notified of the license suspension and could not drive, and confiscated appellant's license. The radio dispatcher also stated that Stanfill's license was suspended or revoked. Appellant acknowledged that Stanfill lacked a valid license.

Holland returned to the van and asked Stanfill if he had a valid license. Stanfill replied that it had been suspended several years ago, and Holland asked him to step from the vehicle. Stanfill stepped out the passenger door and locked it. Holland escorted Stanfill to the squad car where appellant and Phelps were waiting, and informed appellant that he was going to impound the van "and under what authority I was going to impound his vehicle."

Holland decided to radio his supervisor, Sergeant Earll, to advise him of the situation and determine if there were any problems with impounding appellant's vehicle. Holland testified that he decided to check with Earll because he was still a probationary employee with the department and wanted authorization. Earll authorized Holland to proceed.

Holland informed the men they were free to leave, and asked for the keys. Appellant and Stanfill both claimed they didn't have them. Phelps and Holland conducted an unsuccessful patdown search of both men for the keys. After the patdown, Holland testified the men were still free to leave. Holland tried the driver and passenger doors and discovered they were both locked. He walked to the rear of the van and the rear door was unlocked. Holland produced the "CHP 180 form" and started checking off the property, beginning with the spare tire. He opened the rear door looking for anything of value left inside. "And when I opened the door and looked in there, I saw a shotgun lying to—next to the front passenger's seat." Holland entered the van to check the weapon, and discovered it was a loaded .12-gauge pump shotgun. Holland looked to his left and found a .380-caliber semiautomatic pistol sitting on the driver's seat. He checked the second weapon and determined that it was also loaded.

Based on the discoveries, Holland arrested both appellant and Stanfill. The van was towed and stored after the inventory was completed. The case against Stanfill was subsequently dismissed prior to trial.

Deputy Phelps testified that when he arrived at the scene and heard appellant's name, he recognized it but wasn't sure if Holland knew appellant was a possible burglary suspect. Holland never said anything inferring that he had been waiting for a chance to get into Jim Benites's van.

Sergeant Earll confirmed that Holland called him via radio for authorization to tow appellant's van pursuant to Vehicle Code section 22651, subdivision (p). Holland informed him that neither the driver nor the passenger had a valid license, they were being cited pursuant to Vehicle Code section 14601 and he wanted to see if he could get the van towed from the area. "It's in the west end of the county. No houses around, kind of unsafe area to leave the vehicle all night." Earll checked the Vehicle Code then authorized Holland to tow it. Earll testified that the decision to tow a vehicle in such a case was left to the officer's discretion, and he didn't know why Holland requested authorization.

Holland testified that his only option was to impound the vehicle. He reached this decision based on several factors. Neither person had a current driver's license, and they could not legally drive the vehicle. Also, if he left the van on the roadway, Holland felt that the driver would probably return and drive off once Holland left. The van was parked approximately three miles west of Jamestown. Holland testified that the U-Haul trailer was closed, and he didn't know if anything valuable was inside. If he left the van on the road, it "was a desolate type area, very little traffic on the roadway, it was totally dark, there were no homes that I could see close by, it offered no protection for the vehicle whatsoever out there, and it could either be vandalized or, worse yet, broken into or the whole thing stolen, the whole rig. [¶] It was a very nice van, worth quite a bit of money, and it would be very attractive for someone to steal."

Holland requested the keys to unlock the driver's door so the gears could be shifted into "drive" for towing. Holland testified that he intended to conduct an inventory of the contents of the vehicle "strictly for safekeeping" and to record the contents in case the owner later claimed something was missing.

Holland testified that he did not ask appellant about the contents of the trailer. Deputy Phelps contradicted this testimony. Phelps testified that while Holland was writing the citation, and before he entered the van, he asked appellant about the contents of the trailer. Appellant replied that nothing was inside and voluntarily opened the trailer door. Phelps testified that appellant was waiting for the citation when this happened, and was not under arrest.

Cindy Moss, appellant's girlfriend, testified that she was driving the van on November 20, 1987, when she was pulled over by two sheriff's cars.

Moss testified that they had "no reason" for stopping her, but eventually found a violation on the van's registration. Moss testified that the deputy asked to search the van and wouldn't give a reason. Moss refused, and the deputy replied that he knew the van belonged to Jim Benites, "and that any time he saw that vehicle out on the road, he would stop that vehicle and jack Jim up."

Moss was not sure, however, if Deputy Holland was involved in the November 1987 incident. Moss thought Deputies Holland and Woods were the officers involved, but wasn't sure because the officer believed to be Holland didn't give his name or write the citation, and seemed to look different than Deputy Holland did at the suppression hearing. In response to this testimony, the prosecution stated that it could prove that Holland was not working that day, and that two other officers were involved in the November 1987 traffic stop. Defense counsel accepted the stipulation.

Holland testified that he did not stop Cindy Moss on November 20, 1987. Holland had never seen the van before appellant's traffic stop, and never told Moss to let "Jim" know he would try to search it.

The balance of the suppression hearing testimony focused on appellant's attempt to determine if the sheriff's office had a formal policy for impounding vehicles and conducting inventory searches. Holland testified he did not receive a formal, written "Policy and Procedures" manual when he joined the force because it was being revised. Instead, he received verbal instructions on departmental procedures during his training period. When he was trained by Deputy Heald, he was told that the department's impoundment policy relied on the officer's discretion with the Vehicle Code as a guide. Heald explained that if the vehicle could be released to someone with a license, then towing wasn't necessary. However, if it seemed like the driver was going to drive off after the officer left, or if the vehicle contained valuables, then the vehicle should be impounded and stored.

Holland was also asked about departmental procedures for impounding vehicles. He testified the procedure was to use the "CHP 180 form" and that in every case where it is practical, an inventory must accompany the storage of a vehicle.

Assistant Sheriff Costa also instructed Holland during his training period. Holland was told that if a vehicle was used in a crime, it should be impounded and appropriately recorded on "CHP 180 form" pursuant to Vehicle Code section 22651, subdivision (p). Costa explained that the deputies used their "good discretion" and followed the Vehicle Code in reaching

a decision to impound a vehicle. Holland and Costa went over certain situations, such as if the vehicle was in a "country type setting, where there was not any protection or security for the vehicle, and that the vehicle contained any valuables, that definitely to store the vehicle for my protection so that the county could not come back and be sued for negligent action on the officer if those valuables or the car were stolen or broken into or vandalized." Holland was also warned about the chance the driver would return and drive away with the vehicle. Under such circumstances, the vehicle should definitely be impounded and stored.

Both sides introduced numerous exhibits consisting of prior incident reports filed by the various officers in an attempt to establish the existence or lack of a departmental impoundment and inventory policy. The prosecutor stipulated that the sheriff's office did not have written procedures dealing with circumstances under which vehicles should be towed. Several officers were called to the stand regarding prior incidents (totally unrelated to the instant traffic stop) in which the decision had been made either to impound the vehicle or leave it in the street.

Deputy Phelps testified that there was no written policy on impoundment. Phelps had ordered the impoundment and towing of vehicles in the past based on authorization under Vehicle Code sections 14601 and 22651, subdivision (p). Phelps reviewed several incident reports from 1987 in which drivers had been cited under section 14601 for driving with a suspended license. In one incident, the vehicle was not impounded because it was parked two blocks from the driver's residence and he walked home to get a licensed driver.

Deputy James Bland testified that a deputy was not required to get permission from anyone before towing a vehicle. Bland explained that deputies rely on the discretionary procedures under Vehicle Code section 22651. Deputies Hoback and DeMartini also confirmed that permission was not required to tow a vehicle, and the decision is left to the officer handling the call. Deputy DeMartini reviewed several incident reports where he cited a driver for driving with a suspended license under Vehicle Code section 14601, and explained that he did not tow the vehicle when a licensed passenger was present. DeMartini explained that the decision depended on whether a phone was close enough for the driver to call someone. If not, and the officer offered a ride and the driver refused, he might wait for the officer to leave then drive off. In such a situation, the vehicle would be impounded and towed away.

Deputy Brown was not aware of a formal policy within the sheriff's office for towing a vehicle after a Vehicle Code section 14601 violation. A vehicle

was not towed in one instance because it was within walking distance to the driver's house. In another incident, the driver was cited in an area with heavy snowfall, and the officer followed the driver for a short distance in order to reach a pack station. Brown did not impound vehicles when one of the passengers had a valid license. The vehicle is towed after an arrest to secure the individual's property or preserve it for an investigation.

Assistant Sheriff Michael Costa testified about the training Holland received when he was hired as a deputy in 1987.[1] Costa recalled a conversation in which Holland asked about the department's policy for towing vehicles:

"I told him that there was no written guidelines set down by the department concerning specifically tows on [Vehicle Code section] 14601's. That we utilize the discretion as authorized in the vehicle code and that—if he felt that by releasing the individual at the site and leaving the vehicle there that the individual would drive off and hence violate the law again. Then he has discretion to tow it. And, of course, the law in there says if there is a licensed driver that can drive the vehicle when a person releases that custody of vehicle to that person, then you would not tow in that situation."

The sheriff's department did not have an actual written policy for procedures for impoundment and towing after a driver is cited under Vehicle Code section 14601. "We have only verbal directive to use discretion and follow guidelines established in the vehicle code." Costa also reviewed prior incident reports on other violations. Holland's conduct in the Benites matter conformed to Costa's instructions regarding the circumstances under which to tow a vehicle.

Deputy Heald also trained Holland on the application of Vehicle Code section 22651 and the use of "CHP 180 form" to inventory a vehicle. Heald confirmed that the department did not have formal written guidelines, but left it to the officer's discretion under the code.

Holland was also presented with prior incident reports involving Vehicle Code section 14601 citations. One incident involved a driver who had a passenger with a valid license, so the vehicle was not impounded. Another person was arrested as a drunken driver and cited for violation of section 14601, and the vehicle was towed. One individual was arrested on an outstanding warrant, and his vehicle was left in a store's parking lot.

Sergeant John Stearman of the California Highway Patrol testified on police academy training regarding Vehicle Code section 22651, subdivision

---

[1]Holland was a 12-year veteran of the Los Angeles Police Department Metro Division when he joined the Tuolumne County Sheriff's Department.

(p). If a driver is cited for not having a valid license, the vehicle should be impounded based on the likelihood the driver might return to the car and leave. The officer should also consider whether the vehicle is in a secure location, based on the time of day and type of neighborhood.

Defense counsel clarified that the suppression motion was only based on the decision to enter the vehicle and conduct the inventory search. The actual fruits of the search were not relevant to the motion, and counsel stipulated to the evidence itemized in the motion as being discovered in the van. Defense counsel argued that the impoundment and inventory search did not meet the United States Supreme Court's exceptions under the Fourth Amendment. The matter was left entirely to the officer's discretion, and Holland improperly thought he only had one option. Counsel also pointed out that Holland's justification regarding the possibility of valuable property in the U-Haul was disputed by Phelps's testimony that appellant voluntarily opened the van and showed that nothing was inside it. In addition, the van was already locked and secured. The patdown search was an impermissible seizure. The deputies' "unfettered discretion" to impound a vehicle left open the possibility of abuse.

The prosecution replied that there was no challenge to the validity of the original reason for the traffic stop, and that appellant was driving with a suspended license. The prior incidents illustrated that the officers use the same standards in exercising their discretion on impoundment. Deputy Holland's conduct regarding appellant's van was no different than past conduct by the other deputies. As for the patdown, there was no violation because it didn't produce any evidence.

The court denied the suppression motion and held the initial traffic stop was valid. The court reviewed the incident reports introduced into evidence and the testimony of the officers, and found that "there is no written procedure as to towing the vehicle, apparently, it's left to the officer's discretion," but the officers relied on Vehicle Code section 22651, subdivision (p) in each case. The court also determined that the department did not have a written procedure as to an inventory search. "However, apparently, there is a policy that if the officer, and we're talking about deputies of the Tuolumne County Sheriff's Office, make a decision to tow the vehicle or to store it or to impound it, there is a policy that an inventory search must be completed using the California Highway Patrol Form 180." Each time a deputy ordered a vehicle to be towed, he used form 180 to inventory the vehicle. "So, apparently, you do have a policy and procedure as to requiring inventory if there is a decision to tow."

The court noted Benites's objection that "this freedom of decision to tow is what is lacking in this matter, that there is not a procedure or a written

procedure establishing how that is to be done. [¶] I don't know that you can write a procedure as to when a tow must be made, other than considering the circumstances under which you happen to be." The court relied on *South Dakota* v. *Opperman* (1976) 428 U.S. 364 [49 L.Ed.2d 1000, 96 S.Ct. 3092] and *People* v. *Burch* (1986) 188 Cal.App.3d 172 [232 Cal.Rptr. 502]. "Considering the circumstances that existed at the time of the stop, the Court finds it reasonable to tow the vehicle or store the vehicle or to call for the tow or storage under the circumstances." The court also approved of the inventory search "to protect the suspect's property while protecting the public, and also protects the police from the loss of stolen property, it protects the police from potential danger."

On appeal, Benites contends that the absence of a departmental policy on impoundment and the reliance on an officer's discretion violate the Fourth Amendment and invalidate the inventory search.

## DISCUSSION

### *The Suppression Motion Was Properly Denied.*

■ In a suppression proceeding under Penal Code section 1538.5, the power to judge the credibility of witnesses, resolve conflicts in the testimony, weigh evidence and draw factual inferences is vested in the trial court. On appeal, this court must view the evidence in the light most favorable to the trial court's order denying the motion to suppress, and must affirm its determination if supported by substantial evidence. (*People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]; *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 636 [108 Cal.Rptr. 585, 511 P.2d 33].)

■ The trial court also has the duty to decide whether, on the facts found, the detention was reasonable within the meaning of the Constitution, which is a question of law. (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) The People have the burden to prove the detention was justified. (*People* v. *Duncan* (1986) 42 Cal.3d 91, 97-98 [227 Cal.Rptr. 654, 720 P.2d 2].) This court must exercise its independent judgment in determining whether the detention was reasonable. (*Ibid.*)

■ Whether evidence is subject to exclusion because of an illegal search and seizure must be determined pursuant to the Fourth Amendment of the federal Constitution; the state Constitution no longer affords independent grounds in determining the scope of the exclusionary rule. (*In re Lance W.* (1985) 37 Cal.3d 873, 888-890 [210 Cal.Rptr. 631, 694 P.2d 744].)

Appellant contends that the sheriff's department's lack of standardized criteria, and reliance on the deputies' discretion, render the impoundment and subsequent search of the van unconstitutional. Appellant does not contest the validity of the initial traffic stop, the defect in the license plate light, or the lack of a valid driver's license by either himself or his passenger.

Deputy Holland cited appellant for driving with a suspended license pursuant to Vehicle Code section 14601, which states in pertinent part:

"(a) No person shall drive a motor vehicle at any time when that person's driving privilege is suspended or revoked . . . and when the person so driving has knowledge of the suspension or revocation. Knowledge shall be presumed if notice has been given by the department to the person. The presumption established by this subdivision is a presumption affecting the burden of proof." Holland additionally relied on Vehicle Code section 22651 in deciding to impound the vehicle. This section states in pertinent part:

"Any peace officer . . . of a city or a county in which a vehicle is located, may remove a vehicle located within the territorial limits in which the officer or employee may act, under any of the following circumstances:

". . . . . . . . . . . . . . . . . . . . . .

"(p) When the peace officer issues the driver of a vehicle a notice to appear for a violation of Section 12500, 14601, 14601.1, or 14601.2 and there is no passenger in the vehicle who has a valid driver's license and authorization to operate the vehicle. Any vehicle so removed from the highway or any public lands shall not be released to the registered owner or his or her agent, except upon presentation of the registered owner's or his or her agent's currently valid driver's license to operate the vehicle and proof of current vehicle registration, or upon order of a court."

In *South Dakota* v. *Opperman, supra,* 428 U.S. 364, an automobile was impounded by the police for overtime parking in a restricted area. The car was taken to the city impound lot. A policeman observed a watch on the dashboard and other items of personal property in plain view from the outside of the vehicle. The officer ordered the car to be unlocked and the contents of the car inventoried pursuant to police regulations. (*Id.* at p. 380, fn. 6 [49 L.Ed.2d at pp. 1011-1012].) The court held the inventory search to be reasonable under the Fourth Amendment: the inventory practice by the police department to safeguard the vehicle's contents was standard police procedure generally followed throughout the country. (*Id.* at p. 376 [49 L.Ed.2d at p. 1009].) In light of the strong governmental interest to prevent

claims of stolen property, and the diminished expectation of privacy in a vehicle, the court upheld the inventory search and noted other cases which accorded deference to police caretaking procedures designed to secure and protect vehicles and their contents within police custody. (*Ibid.*)

This court relied on *Opperman* and addressed a similar issue in *People* v. *Burch, supra,* 188 Cal.App.3d 172. Defendant was pulled over for an expired vehicle registration tag and inoperative taillights. Defendant informed the officer that his license was suspended. The officer verified the suspension by police radio, and noticed a knife sheath on defendant's belt. Defendant admitted that he carried a knife, and the officer conducted a patdown search which revealed several screwdrivers, a knife, and a glass doorknob. The officer also observed in plain view in the passenger area several carburetors, tools, gas cans, and that defendant's hands appeared greasy. The officer was aware of recent information of nighttime thefts of automobile parts in the area. (*Id.* at pp. 174-175.) The officer testified that he intended to cite defendant for the suspended license and, therefore, pursuant to a requirement by the City of Modesto, conduct an inventory of the property within the car prior to impounding it. During the inventory, the officer discovered narcotics, and defendant was arrested for possession of a controlled substance. The officer also testified that he usually had cars towed when he cited drivers pursuant to Vehicle Code section 14601 to prevent the driver from simply reentering the vehicle and driving away. (188 Cal.App.3d at p. 175.)

This court held that the inventory of the car was valid and rejected defendant's argument that the officer's reliance on Vehicle Code section 22651, subdivision (p) to impound the car was used only as a "ruse." (188 Cal.App.3d at p. 176.) *Burch* was decided after the passage of Proposition 8; this court accordingly applied federal law and relied on *Opperman.*

" 'When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody [citation]; the protection of the police against claims or disputes over lost or stolen property [citation]; and the protection of the police from potential danger [citation]. The practice has been viewed as essential to respond to incidents of theft or vandalism. [Citations.]' " (*People* v. *Burch, supra,* 188 Cal.App.3d at pp. 177-178, quoting *South Dakota* v. *Opperman, supra,* 428 U.S. at p. 369 [49 L.Ed.2d at p. 1005].) This court reviewed other federal cases, including a Ninth Circuit opinion which upheld an inventory search as part of standard procedure pursuant to *Opperman.* (*United States* v. *Jamerson* (9th Cir. 1977) 549 F.2d 1263.) *Burch* concluded that the officer's conduct was reasonable within the limits of *Opperman:*

"The officer had the option under Vehicle Code section 22651, upon citing the driver, to tow the vehicle. The officer testified it was his regular procedure upon citing a driver for a violation of Vehicle Code section 14601 to have the car towed so as to prevent the driver from simply getting back into his vehicle and driving away. It was his intent to cite the driver for a Vehicle Code section 14601 violation; he called for a tow truck to tow the vehicle and commenced a routine inventory search. . . . [T]he officer reasonably looked under the seat to see if any other items of value were located there. . . ." (188 Cal.App.3d at p. 180.) This court noted the absence of any credible evidence that the inventory search was simply a "ruse" to justify an investigatory search. (*Ibid.*)

The United States Supreme Court again addressed the impound/inventory issue in *Colorado v. Bertine* (1987) 479 U.S. 367 [93 L.Ed.2d 739, 107 S.Ct. 738]. Defendant was arrested for driving under the influence and his vehicle was impounded. An officer inventoried the contents of the vehicle before the tow truck arrived, and opened several canisters and containers which contained narcotics. Defendant challenged the search of the closed containers and argued that it exceeded the scope of such a search. (*Id.* at pp. 368-369 [93 L.Ed.2d at pp. 743-744].) *Bertine* reiterated that inventory searches "are now a well-defined exception to the warrant requirement of the Fourth Amendment." (*Id.* at p. 371 [93 L.Ed.2d at p. 745].) There was no showing that the police, who were following standardized procedures for inventorying an impounded car, were acting in bad faith or for the sole purpose of investigation. As in *Opperman*, the governmental interest of securing property for which the police were responsible justified the search. (*Id.* at pp. 372-373 [93 L.Ed.2d at pp. 745-747].) The court also rejected defendant's argument that an inventory was unnecessary because the vehicle was going to be stored in a secure, lighted facility:

"But the security of the storage facility does not completely eliminate the need for inventorying; the police may still wish to protect themselves or the owners of the lot against false claims of theft or dangerous instrumentalities." (479 U.S. at p. 373 [93 L.Ed.2d at p. 747].) Reasonable police regulations "relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." (*Id.* at p. 374 [93 L.Ed.2d at p. 747].)

*Bertine* also rejected defendant's argument that the inventory search was unconstitutional because departmental regulations gave the police officers discretion to choose between impounding his van and parking and locking it in a public parking place:

"Nothing in *Opperman* or [*Illinois* v. *Lafayette* (1983) 462 U.S. 640 (77 L.Ed.2d 65, 103 S.Ct. 2605)] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. Here, the discretion afforded the Boulder police was exercised in light of standardized criteria, related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it. There was no showing that the police chose to impound Bertine's van in order to investigate suspected criminal activity." (479 U.S. at pp. 375-376 [93 L.Ed.2d at p. 748], fn. omitted.) The court noted that the written directives of the Boulder Police Department set out several conditions before the officer could choose the "park and lock" alternative. (*Id.* at p. 376, fn. 7 [93 L.Ed.2d at p. 748].)

This court again addressed these issues in *People* v. *Steeley* (1989) 210 Cal.App.3d 887 [258 Cal.Rptr. 699]. Defendant was pulled over for having a burned-out headlight. The officer ran a radio check and determined that defendant had a suspended or revoked driver's license and was not the registered owner of the vehicle. The officer cited defendant for driving with a suspended license, and learned that the passenger was also without a valid driver's license. The officer decided to have the car towed for impoundment pursuant to Vehicle Code section 22651, subdivision (p). A baggie of methamphetamine was discovered in the glove compartment during the inventory search. (210 Cal.App.3d at pp. 889-890.)

On appeal, defendant argued the impoundment inventory was invalid because it was not conducted pursuant to a routine policy governed by standardized criteria. Defendant specifically contended that because the officer in the field had discretion to decide whether to have the vehicle impounded or to park and lock the vehicle where it was stopped, the procedure was not "sufficiently routine and standardized to constitute a lawful impoundment inventory." (210 Cal.App.3d at p. 891.) Defendant relied on *Bertine*'s mention of the police department's written directives and claimed that such procedures were not sufficiently standardized to withstand constitutional scrutiny in the absence of written guidelines delineating the circumstances requiring impoundment. (*Ibid.*)

This court rejected the argument and noted that *Bertine*'s reference to the "written directives" was in response to the dissent's contention that the procedures followed by the police were not based on standardized criteria:

"There is nothing in [*Bertine*'s] discussion from which it can be discerned that procedures for impoundment and inventory must be written. While written criteria may be evidence of standardization, the absence of written

criteria would not mean that the procedures were not standard. By the same token, unreasonable procedures do not ipso facto become standard, and therefore legal, merely because they are contained in a written directive." (*People* v. *Steeley*, *supra*, 210 Cal.App.3d at p. 891.) Defendant did not challenge the officer's authority to impound the vehicle pursuant to Vehicle Code section 22651, subdivision (p), but this court noted the fact that the statute "gives the officer the discretion to decide whether to impound or to otherwise secure the vehicle does not mean that the procedure is unreasonable in Fourth Amendment terms. The fact that there may be less intrusive means of protecting a vehicle and its contents does not render the decision to impound unreasonable. (*Colorado* v. *Bertine*, *supra*, 479 U.S. at pp. 374-375 [93 L.Ed.2d at pp. 747-748] . . . .)" (*People* v. *Steeley*, *supra*, 210 Cal.App.3d at p. 892.) The officer testified that he was not required to impound and tow a vehicle after citing a driver for driving with a suspended or revoked license, but in making the decision he would consider "whether there was another licensed driver in the vehicle, where the vehicle was located, how many citations had been issued to the driver and whether the driver is the owner of the car." (*Ibid.*) The officer's decision was not unreasonable because there was no licensed driver present, defendant was not the registered owner, and the vehicle was blocking a driveway.

This court also approved of the inventory search which followed the impoundment. The officer testified that an inventory is standard procedure prior to towing to record the property within the vehicle. "Inventory searches of the type conducted in this case are recognized across the nation as standard caretaking functions of the police." (210 Cal.App.3d at p. 892.)

In *Florida* v. *Wells* (1990) 495 U.S. 1 [109 L.Ed.2d 1, 110 S.Ct. 1632], the Supreme Court clarified *Bertine*. Defendant was arrested for driving under the influence and his car was towed. During the inventory search, officers forced open a locked suitcase and discovered marijuana. The record contained no evidence of any Highway Patrol policy on the opening of closed containers during inventory searches. (495 U.S. at p. 3 [109 L.Ed.2d at pp. 5-6].) The lower court upheld the search based on language in *Bertine* that there was "room for discretion" in the opening of closed containers during an inventory search. (*Ibid.*)

*Wells* clarified that the court's view that "standardized criteria . . . or established routine [citation], must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." The policy or practice governing inventory searches "should be designed to produce an inventory." (495 U.S. at p. 4 [109 L.Ed.2d at p.

6].) The individual officer must not be allowed so much latitude that inventory searches become a purposeful means of discovering evidence of a crime. (*Ibid.*)

"But in forbidding uncanalized discretion to police officers conducting inventory searches, there is no reason to insist that they be conducted in a totally mechanical 'all or nothing' fashion. '[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.' [Citations.] A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors. The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment." (495 U.S. at p. 4 [109 L.Ed.2d at pp. 6-7].) The court reversed the conviction because the Highway Patrol had "no policy whatever with respect to the opening of closed containers encountered during an inventory search." (495 U.S. at pp. 4-5 [109 L.Ed.2d at p. 7].) Absent such a policy, the search was not sufficiently regulated to satisfy the Fourth Amendment. (*Ibid.*)

In the instant case, appellant was pulled over on a valid traffic stop and acknowledged he had a suspended license. Deputy Holland cited him pursuant to Vehicle Code section 14601, and then decided to impound the van after learning that the passenger also lacked a valid license. Holland testified that he felt impoundment was his only option based on the circumstances: the van and trailer were parked off the highway approximately three miles from Jamestown and any public phones; it was a dark, lonely and isolated stretch of road; there was the possibility that appellant would simply drive off once Holland left; it was very late at night; and the van and trailer could be vandalized if left on the highway. The impoundment decision was reasonable under the circumstances.

Appellant contends that *Wells* requires standardized procedures for impoundment and that merely leaving the decision to the officer's discretion is unconstitutional. This is clearly refuted by *Wells*'s acknowledgement that such situations are not left to "all or nothing" guidelines. (*Florida* v. *Wells*, *supra*, 495 U.S. at p. 4 [109 L.Ed.2d at p. 6, 110 S.Ct. at p. 1635].) Rather than restrict *Bertine* (and *Steeley*'s analysis of that case), *Wells* merely

clarified that discretion must be exercised on some standard other than suspicion of criminal activity. (*Ibid.*)

It is undisputed that the Tuolumne County Sheriff's Department does not have a formal written manual setting out procedures on when a deputy should impound a vehicle after a Vehicle Code section 14601 violation. It is equally clear that the department does not leave the impoundment decision to the officers' unfettered discretion. Instead, the deputies and supervising officers testified that such a decision is left to the deputy's discretion with Vehicle Code section 22651, subdivision (p) as guidance. Their testimony also consistently set out similar circumstances under which the vehicle is impounded: whether a licensed passenger was present, the location of the traffic stop, and the safety of leaving the vehicle at the particular location. If the officer decides to impound and tow the vehicle, then the department requires an inventory pursuant to "CHP 180 form." Such circumstances infer that the officer's discretion to impound is clearly based on factors other than using it as a pretext to engage in a search for criminal activity.

Appellant contends that impoundment was not necessary to ensure the security of the van since the doors could have been locked and it was safely parked on the side of the road. *Bertine* rejected the same argument and held that reasonable inventory procedures administered in good faith were valid even if hindsight suggested an equally reasonable procedure. (*Colorado* v. *Bertine, supra,* 479 U.S. at p. 374 [93 L.Ed.2d at p. 747].)

Appellant points to the patdown search as an impermissible act in the absence of evidence of a weapon or threat to the officer. This issue is rendered moot, however, because Holland did not recover any fruits from that search. As for the conflict in testimony regarding whether anything was inside the trailer, it must be presumed that the trial court resolved that factual conflict in favor of denying the suppression motion. (*People* v. *Holquin* (1989) 213 Cal.App.3d 1308, 1315 [262 Cal.Rptr. 331].)

Appellant also points to Cindy Moss's testimony regarding the anonymous deputy's threat to stop the van as evidence of a "ruse" to get inside his vehicle. However, appellant fails to note that Moss could not positively identify Holland as the deputy involved in the November traffic stop, and defense counsel stipulated to the prosecution's offer of proof that two other deputies actually stopped Moss.

Deputy Holland's decision to impound the vehicle was reasonable under the circumstances. While the department lacked a written policy on impoundment, the deputies are clearly given parameters under which to exercise their discretion pursuant to Vehicle Code section 22651, subdivision

(p). While section 22651, subdivision (p) only authorizes impoundment, the court has clearly upheld the inevitable inventory search.

 It should also be noted that once Deputy Holland opened the rear door and found the loaded shotgun, probable cause to search the rest of the van was created thus rendering moot any issue concerning the scope of the subsequent inventory search. (See *United States* v. *Ross* (1982) 456 U.S. 798, 820-824 [72 L.Ed.2d 572, 590-593, 102 S.Ct. 2157].)

Since the traffic stop, decision to impound and subsequent inventory search were reasonable under the circumstances, the superior court properly denied the suppression motion.

### DISPOSITION

The judgment is affirmed.

Martin, Acting P. J., and Dibiaso, J., concurred.

A petition for a rehearing was denied September 24, 1992, and appellant's petition for review by the Supreme Court was denied November 25, 1992.