Filed 5/18/26  P. v. Coleman CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEITH COLEMAN,<br><br>    Defendant and Appellant. | B341690<br>(Los Angeles County<br>Super. Ct. No. 23CMCF00114-01) |

APPEAL from judgment of the Superior Court of the County of Los Angeles, Danette J. Gomez and Carol J. Najera, Judges.  Affirmed.

Nancy Sànchez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising

Deputy Attorney General, Zachary John Crvarich, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Keith Coleman pled no contest to felony obstructing or resisting an executive officer. He contends the court erred in denying his motion under Penal Code section 1538.5[1] to suppress evidence of a firearm discovered during an inventory search of his vehicle. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**A. The Traffic Stop and Inventory Search**

Los Angeles County Sheriff's Department Deputy Matthew Yuzon testified to the following facts at the suppression hearing. On November 30, 2023, at 6:45 a.m., Yuzon and his partner saw a brown GMC Yukon in an alley north of Compton Boulevard in Compton. Coleman acknowledges that "[t]he GMC was parked illegally, and the front license plate was missing." Yukon and his partner approached the parked vehicle, initiating a traffic stop. Coleman was in the driver's seat, and the passenger had marijuana and paraphernalia in her lap.

Coleman indicated he had a valid driver's license. Yuzon checked it against Department of Motor Vehicles (DMV) records, which revealed the license was suspended. He did not read the entire record or see whether Coleman received notice of the suspension from the DMV. Yuzon arrested Coleman "based on

---

[1]     Undesignated statutory references in this opinion are to the Penal Code.

the fact that his license was suspended . . . ."  The passenger was arrested for unlawful possession of marijuana.  Yuzon later learned that Coleman had not been notified of the suspension of his license until he was arrested.

Consistent with the Sheriff's Department's standard procedures, Yuzon decided to impound the vehicle because it was parked illegally in a "known . . . high-crime area" where it was "vulnerable to vandalism or theft."  Yuzon had personally responded to several calls involving vehicle-related crimes in the area.  Though Coleman was not allowed to retrieve personal items himself, Yuzon "asked him what he wanted to be taken out of the vehicle."[2]

Yuzon conducted an inventory search of the vehicle for the purposes of ensuring the safety of law enforcement, the tow company driver, and Coleman and identifying high-value items. In the back seat, Yuzon found a black bag containing a .22-caliber automatic rifle.  After securing the firearm, the deputies determined Coleman was a convicted felon and read him his Miranda rights.  Coleman stated he purchased the firearm a couple of years earlier but was not the registered owner.

## B.    Motion to Suppress

The People filed a felony complaint charging Coleman with possession of a firearm by a felon (§ 29800, subd. (a)(1), count one).

The court conducted a hearing on Coleman's motion to suppress the seized firearm and the preliminary hearing on March 13, 2024.  Coleman argued that his arrest for driving with

---

[2]    Defense counsel elicited this testimony on cross-examination but did not ask how Coleman responded.

3

a suspended license (Veh. Code, § 14601.1[3]) was not supported by probable cause given the absence of evidence he had actual knowledge of the suspension, and therefore, the search that followed was invalid. He also argued that the inventory search did not fall within the "community caretaking" exception to the Fourth Amendment's search warrant requirement.

The court denied the motion, finding that the decision to impound the vehicle was reasonable. The court found that whether Coleman had prior notice of the suspension was not relevant because once the deputies became aware of the suspension, they could not permit him to drive away. The vehicle, moreover, was illegally parked, and unless towed, would have been left in a high-crime area where it would have been at risk of vandalism or theft.

In June 2024, Coleman filed a renewed motion to suppress the firearm, which also was denied.

Pursuant to a plea agreement, the information was amended to add one count of felony obstructing or resisting an executive officer (§ 69, count two). Coleman pled no contest to count two, and count one was dismissed. Coleman was placed on probation for two years and imposition of his sentence was suspended.

Coleman appealed from the judgment.

---

[3] Vehicle Code section 14601.1, subdivision (a) provides, in relevant part: "No person shall drive a motor vehicle when his or her driving privilege is suspended . . . if the person so driving has knowledge of the suspension or revocation. . . ." Knowledge is "conclusively presumed if mailed notice has been given" by the DMV.

# DISCUSSION

## A.    Governing Law

The Fourth Amendment guarantees the right against unreasonable searches and seizures by the government.  (*People v. Camacho* (2000) 23 Cal.4th 824, 829.)  A warrantless search or seizure is presumed unconstitutional, and the government bears the burden of establishing by a preponderance of the evidence that its action fell within an exception to the warrant requirement.  (*People v. Perez* (2026) 119 Cal.App.5th 345, 359 (*Perez*); *People v. Romeo* (2015) 240 Cal.App.4th 931, 939.)

One such exception is the community caretaking function, which allows impoundment of vehicles that jeopardize public safety and the efficient movement of traffic.  (*Perez, supra,* 119 Cal.App.5th at p. 359.)  Impoundment permits an officer to conduct a warrantless search aimed at securing or protecting the vehicle and its contents.  (*Ibid*.)

To fall within the exception, an impound decision must be justified by a community caretaking function other than suspicion of evidence of criminal activity, for example, when a vehicle is parked illegally, blocks traffic, or stands at risk of theft or vandalism.  (*Perez, supra,* 119 Cal.App.5th at pp. 359–360.)  Whether someone other than the defendant could remove the car to a safe location is a relevant consideration.  (*Id.* at p. 360.)  We consider both the objective reasonableness of the impound decision and the subjective intent of the impounding officer in determining whether an impound decision was motivated by an improper investigatory purpose.  (*Ibid*.)  The ultimate question is whether the decision was reasonable under all the circumstances.  (*Ibid*.)

On review of a motion to suppress evidence based upon a violation of the Fourth Amendment, we view the facts in the light most favorable to the respondent and will uphold the trial court's factual findings if supported by substantial evidence.  (*People v. Woods* (1999) 21 Cal.4th 668, 673.)  We exercise our independent judgment in determining the legality of a search on the facts so found.  (*Id.* at pp. 673–674.)

**B.     Analysis**

On appeal, Coleman contends the firearm should have been suppressed because the deputies arrested him without having an objectively reasonable suspicion that he violated Vehicle Code section 14601.1.  The crime for which he was arrested, he argues, requires a driver's actual knowledge of the suspension of his license.  He argues the deputies had no basis for believing he had such knowledge before they arrested him.  Because the arrest was made without probable cause, he contends, the decision to impound the vehicle was a pretextual basis for conducting an unlawful search.

We disagree.  As the trial court observed, Coleman's prior knowledge of the suspension of his license is not determinative.  Coleman does not contest the lawfulness of the traffic stop or dispute the violations that precipitated it.  (See *People v. Valle* (2024) 105 Cal.App.5th 195, 202–203 [lack of a front license plate is a legitimate basis for a traffic stop]; *People v. Bennett* (2011) 197 Cal.App.4th 907, 917 [stop initiated after officers observed defendant sitting in an illegally parked vehicle was reasonable under Fourth Amendment].)  During the stop, the deputies legitimately checked Coleman's license against DMV records.  (See *People v. Valencia* (1993) 20 Cal.App.4th 906, 918.)  Upon

6

learning the license was suspended, they could not permit Coleman to drive away. Coleman does not contend the passenger who was discovered with marijuana paraphernalia on her lap could have lawfully and safely moved the vehicle from the alley. He also does not dispute that, were the vehicle not moved, it would have been illegally parked and at risk of theft or vandalism. Under these circumstances, impoundment of the vehicle and the preparatory inventory search were proper community caretaking functions and not the product of pretext. (See *People v. Benites* (1992) 9 Cal.App.4th 309, 328 [impoundment and inventory search after stop for a license plate violation were reasonable where driver and passenger lacked valid licenses, and vehicle was at risk of vandalism if not moved from highway]; see also *Coalition on Homelessness v. City and County of San Francisco* (2023) 93 Cal.App.5th 928, 941 ["illegally parked cars may be towed under the vehicular community caretaking exception"].)

The cases cited by Coleman are distinguishable and do not compel a different outcome. In *People v. Torres* (2010) 188 Cal.App.4th 775, the deputy "conceded a narcotics officer had previously asked him to 'develop some basis for stopping' defendant." (*Id.* at p. 781.) After the deputy pulled the defendant over for traffic violations, the defendant parked in a stall in a public lot near a restaurant and admitted his license was suspended. (*Id.* at p. 780.) The deputy then impounded the truck so that he could "'look for whatever narcotics-related evidence might be in the [truck].'" (*Id.* at p. 789.) Here, there was no evidence that deputies knew of Coleman's criminal history before they saw the illegally parked vehicle missing a license plate or that they impounded the vehicle to search for

7

evidence of unrelated crimes. Yuzon ascertained Coleman's prior felony conviction only after finding the rifle. Further, rather than parking in a stall in a public lot, Coleman was illegally parked in a high risk location.

*United States v. Twilley* (9th Cir. 2000) 222 F.3d 1092 is not controlling because it involved the propriety of an initial traffic stop and did not involve a community caretaking search. There, an officer conducted a traffic stop based on a misunderstanding of Michigan license plate laws, then questioned the driver and passengers to ascertain whether they were transporting narcotics. Officers obtained the driver's consent to search the vehicle and found cocaine in the trunk. The Ninth Circuit held the cocaine should have been suppressed. The initial stop was made without reasonable suspicion of criminal activity in violation of the Fourth Amendment, and the search and seizure of the cocaine were a product of that stop. (*Id.* at 1097.) Because Coleman does not contend the initial stop in this case was unjustified, this case is distinguishable.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MORI, J.

We concur:


ZUKIN, P. J.


TAMZARIAN, J.