[No. G004799. Fourth Dist., Div. Three. Nov. 9, 1987.]

THE PEOPLE, Plaintiff and Appellant, v.
JAMES CARL SCIGLIANO, Defendant and Respondent.

COUNSEL

Cecil Hicks, District Attorney, Maurice L. Evans, Assistant District Attorney, Brent F. Romney and Donna Crandall, Deputy District Attorneys, for Plaintiff and Appellant.

Roger Jon Diamond for Defendant and Respondent.

OPINION

**WALLIN, Acting P. J.**—James Scigliano was charged with possession and possession for sale of methamphetamine, possession of a syringe and giving

false information to a police officer. At his preliminary hearing, Scigliano unsuccessfully sought to suppress the narcotics which were found in a closed container during an automobile inventory search. The superior court, however, disagreed with the magistrate and granted a motion to set aside the narcotics offenses, concluding the narcotics should have been suppressed. The prosecution has appealed.

I

Anaheim Police Officer James Wilkes was on routine patrol during the afternoon of August 3, 1986, when he saw Scigliano driving a 1986 Corvette which had no windshield. Scigliano drove from a parking lot onto the street as Wilkes followed and effected a traffic stop for the infraction of driving a vehicle without a windshield. Scigliano drove from the public street into a restaurant parking lot before stopping.

Wilkes requested Scigliano's license and registration and noted the presence of a female passenger, later identified as Ginger Kempster. Scigliano said his license and the car's registration were at home. He admitted the car was not his and Wilkes confirmed through the police dispatcher that it was registered to someone else. He also falsely identified himself as "James Maupin," and gave Wilkes a date of birth and address. Wilkes returned to his police vehicle and radioed in to confirm "Maupin" was licensed, but learned no one with that name and date of birth had ever been licensed to drive in California.

Wilkes returned to the car and inquired whether Kempster had a driver's license. She produced an expired temporary driver's license. Wilkes attempted to determine by radio whether her temporary license had been extended and was instead informed there was a traffic warrant for her arrest.

Wilkes then ordered both parties out of the Corvette and advised them they were under arrest, Kempster for the warrant and Scigliano for the misdemeanor of being an unlicensed driver (Veh. Code, § 12500, subd. (a)). Wilkes testified he also arrested Scigliano under the authority of Vehicle Code section 40302, subdivision (a), which requires that any driver charged with a Vehicle Code infraction be taken before a magistrate if he fails to present a driver's license or other satisfactory evidence of his identity.

Wilkes called for a tow truck to impound the Corvette because both parties were being arrested and there was no way to secure the vehicle without a windshield. An expensive stereo system and other personal valuables were visible and unprotected. Although there was a rear

compartment, it could not be effectively locked because the latch was within reach through the open windshield.

Following his department's required procedures, Wilkes began to inventory the car's contents while waiting for the tow truck to arrive. He used a standard inventory form which he always carried on his clipboard. Wilkes noted the stereo, a mini-cassette player and an extra speaker he discovered in the glove compartment. He also saw a Nikon camera in a metal case and compact discs in a black nylon pouch, both located in the back of the car and visible through a glass hatchback. Wilkes released the latch and reached into the car to inventory those items. In the same area he found a black opaque box which was bound by a large rubber band resembling part of a tire tube. Opening the box to determine whether any valuable items were inside, Wilkes observed a syringe and a tan plastic bag. He also opened the bag and discovered a large quantity of a white powder, later identified as methamphetamine.

## II

In his superior court motion to set aside the information (Pen. Code, § 995), Scigliano argued the magistrate erred in concluding the methamphetamine was lawfully seized during an inventory search. Relying on California Supreme Court authority, *Mozzetti* v. *Superior Court* (1971) 4 Cal.3d 699 [94 Cal.Rptr. 412, 484 P.2d 84], the superior court concluded the search of the closed container violated Scigliano's Fourth Amendment rights and granted the motion to set aside the two narcotics offenses. Contrary authority from the United States Supreme Court compels a reversal and reinstatement of those charges.

■ Initially, we reject Scigliano's claim the inventory was unlawful because the officer had no right to impound the Corvette. Scigliano points out that Vehicle Code section 22651 authorizes impounding vehicles under certain situations when the vehicle is on a public highway. And the prosecution concedes Scigliano had parked the Corvette on private property, not a public highway. ■ The Vehicle Code, however, is not the only source of authority to impound a vehicle. Indeed, the police have a duty to protect a vehicle, like any other personal property, which is in the possession of an arrestee.

The duty to protect an arrestee's property falls within the officer's "community caretaking function" enunciated in *Cady* v. *Dombrowski* (1973) 413 U.S. 433 [37 L.Ed.2d 706, 93 S.Ct. 2523]. "Local police officers . . . frequently . . . engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection,

investigation, or acquisition of evidence relating to the violation of a criminal statute." (*Id.*, at p. 441 [37 L.Ed.2d at pp. 714-715].) The Supreme Court of Connecticut applied the principle and refused to suppress evidence seized from a vehicle after an officer entered to safeguard a guitar because the windwing was broken and the car could not be locked. (*State* v. *Tully* (1974) 166 Conn. 126 [348 A.2d 603].) That court explained the "community caretaking function" within the context of the Fourth Amendment and its prohibition against "unreasonable" searches. The same analysis applies here.

Ordinarily, a vehicle can be secured at the scene. The police are protected from liability for losses if a vehicle is secured and left behind while the arrestee is taken away. The Vehicle Code provides specific instances when impounding is nevertheless appropriate even though the vehicle can be secured. This case, however, presents an entirely different question. Here we deal with the officer's duty to protect the arrestee's property which cannot be secured.

We have no doubt Scigliano would sing a different tune had the officer simply abandoned the unsecured Corvette and the property within disappeared before Scigliano could return to retrieve it. In that situation he would have argued the police were liable for not taking steps to insure the property's safekeeping. He would also undoubtedly argue the impound authority in the Vehicle Code is not exclusive and does not apply because the police have a general duty to protect the property of an arrestee.

Had Scigliano been arrested while walking down the street with an expensive camera in his hands the officer would have had a duty to provide for its safekeeping and not simply leave it at the arrest site. The duty is no different where, as here, the camera and other valuable property were in an open vehicle which could not be secured. The officer had authority to impound the vehicle to protect the property inside, irrespective of his statutory authority to impound vehicles on highways.

We also note at least one other court has upheld a similar search where the state impound statute authorized impounding vehicles on public highways. In *Starks* v. *State* (Okla. App. 1985) 696 P.2d 1041, the appellant drove his car into a private parking lot when the police officer initiated a traffic stop for speeding. The court validated an inventory search accompanying the impounding of the appellant's vehicle even though the state impound statute only authorized removal of vehicles from streets or highways. Without discussing the separate caretaking duty involved, that court upheld the inventory and explained "the fact that appellant drove onto private

property, under these circumstances, will not vitiate the authorized impoundment and inventory of the vehicle." (*Id.,* at p. 1043.)

### III

The remaining question concerns the legality of opening closed containers during an inventory search which accompanies the decision to impound a vehicle. Although California Supreme Court authority (*Mozzetti v. Superior Court, supra,* 4 Cal.3d 699) compels a conclusion such a search is unlawful under the Fourth Amendment, United States Supreme Court authority (*Colorado* v. *Bertine* (1987) 479 U.S. 367 [93 L.Ed.2d 739, 107 S.Ct. 738] and *South Dakota* v. *Opperman* (1976) 428 U.S. 364 [49 L.Ed.2d 1000, 96 S.Ct. 3092]) precludes application of the exclusionary rule. (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].)

In 1971 our Supreme Court held that police officers violated the Fourth Amendment when they opened a closed suitcase during a routine inventory search of a vehicle's contents because the owner's privacy interests outweighed the police intrusion and there were other ways to protect the contents of the suitcase without opening it. (*Mozzetti* v. *Superior Court, supra,* 4 Cal.3d at p. 707.)

*South Dakota* v. *Opperman, supra,* 428 U.S. 364, decided by the United States Supreme Court five years later, found no Fourth Amendment violation when the police opened a closed glove compartment during an inventory search. The *Opperman* court emphasized the need to protect an owner's property in police custody, and to insulate the police from claims for lost, stolen or damaged property. (See also *Illinois* v. *Lafayette* (1983) 462 U.S. 640 [77 L.Ed.2d 65, 103 S.Ct. 2605], where the court upheld an inventory search of an arrestee's personal effects.) Earlier this year, in *Colorado* v. *Bertine, supra,* 479 U.S. 367, the court applied the same rule to uphold a police intrusion into a closed container during an automobile inventory search, explaining "the governmental interests justifying the inventory searches in *Opperman* and *Lafayette* are nearly the same as those which obtain here. In each case, the police were potentially responsible for the property taken into their custody." (*Id.,* at pp. 372-373 [93 L.Ed.2d at p. 746].)

As explained in *In re Lance W., supra,* 37 Cal.3d 873, 886-887, Proposition 8 eliminated independent state grounds for the exclusion of evidence and we are compelled to follow *Opperman* and *Bertine.* Moreover, contrary to Scigliano's assertion, the *Bertine* rule applies to this case. (*United States* v. *Johnson* (1982) 457 U.S. 537 [73 L.Ed.2d 202, 102 S.Ct 2579].) *Bertine* merely explains opening a closed container during an automobile inventory search is no different from opening the glove

compartment, a procedure previously approved in *Opperman*. Indeed, even before *Bertine*, the Fifth District rejected *Mozzetti* and applied *Opperman* to uphold the search of a bag retrieved during a similar routine automobile inventory. (*People* v. *Burch* (1986) 188 Cal.App.3d 172 [232 Cal.Rptr. 502].)

The superior court erred in setting aside counts I and II which charged Scigliano with possession and possession for sale of methamphetamine. Scigliano suggests we remand the matter for further hearing so that he may prove the inventory search was unlawful as "a mere pretext to discover evidence of a crime." However, our review is limited to the motion under Penal Code section 995. That motion should have been denied. Neither this court nor the superior court may remand the matter to permit the taking of additional evidence on the search issue at the preliminary hearing stage. Scigliano, however, has the option of pursuing his previously filed de novo motion to suppress evidence in the superior court. His previously filed motion was never litigated or ruled on after the superior court granted his Penal Code section 995 motion.

Judgment reversed.

Sonenshine, J., concurred.

CROSBY, J., Concurring.—Ordinarily, an officer seeking to protect personal property ought to ask the possessor whether he is interested in police assistance. An intrusion into the property of another for his own alleged benefit without so much as a by-your-leave, when the individual is present and in a position to state a preference as to its disposition, should rarely be considered reasonable. Nevertheless, I concur here.

There was good reason to believe, as indeed turned out to be the case, that Scigliano had given the officer a false name. And the car was not registered in that name. Thus, it would have accomplished little to inquire in this particular instance. At the scene the officer would not have been able to satisfy himself as to the defendant's authority, at least not within a reasonable period of time. If the officer had left this very valuable automobile and its contents to the mercy of thieves and vandals in its unlockable condition, the municipality might have been liable in negligence to Scigliano or the owner of the vehicle, or both, and possibly to an insurance company or lender as well. The vehicle was lawfully impounded.

The inventory search was, as the majority states, a violation of the Fourth Amendment under California law. Since federal law is (and long has been) to the contrary, however, the exclusionary rule is not available. (*In re Lance*

*W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744].) For these reasons I agree the judgment must be reversed.