Filed 5/1/14  P. v. Aceves CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ADRIAN ACEVES,<br><br>    Defendant and Appellant. | F065993<br><br>(Super. Ct. No. BF142820A)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Francine R. Tone, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Cornell, J. and Detjen, J.

After the trial court denied his motion to suppress evidence of a firearm, defendant Adrian Aceves pled no contest to being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)). The court sentenced him to 16 months in prison. On appeal, he contends his car was improperly impounded and therefore the subsequent inventory search of the car, which produced the firearm, was illegal. Thus, he argues, the trial court erred in denying his motion to suppress. We disagree and will affirm.

## FACTS

Bakersfield Police Officer Lewis testified that on July 1, 2012, at about 12:37 a.m., he was in uniform and driving a patrol vehicle with his partner, Officer McAfee. Lewis observed a tan Cadillac that had come to a stop about five feet past the first limit line at an intersection, a violation of Vehicle Code section 22450.[1] Lewis conducted a stop on the car. He contacted both defendant, who was driving, and his passenger, and asked them for identification. Defendant provided a California identification card. Lewis conducted a series of record checks based on this card, which revealed that defendant's driver's license had been suspended or revoked and that he was on probation. Lewis and McAfee directed both defendant and his passenger out of the car, patted them down for weapons, and seated them on the curb next to the car. Lewis then decided to impound the car and conduct an inventory search, based on the status of defendant's driver's license and the area's high crime, such as property crimes. It was his community caretaking function to protect the vehicle for the owner and also to protect the department from liability in the event of loss. The Bakersfield Police Department had policies in place for impounding and inventorying vehicles, and Lewis followed those policies in this case. Lewis also had discretion in deciding whether to inventory a vehicle where the driver's license was suspended or revoked, and he exercised that discretion in

---

[1] All further statutory references are to the Vehicle Code unless otherwise noted.

this case. Lewis did not ask defendant for permission to allow the passenger to drive the car.

Lewis conducted an inventory search of the car, checking items in the car, on the outside of the car, and under the hood. Lewis lifted the hood to see if a battery was present. He observed a red rag by the air filter, which he discovered was holding a .22-caliber revolver. At this point, Lewis decided to impound and tow the car.

Lewis decided not to allow the passenger to drive the car away because the passenger was also arrested as possibly possessing a weapon. There were no other bystanders or family members present that could have driven the car away.

On cross-examination, Lewis explained that when he checked defendant's records, he read the court minutes from a 2010 case for which defendant had served a prison term. A database stated defendant was searchable at any time.

Regarding Lewis's decision that the passenger could not drive the car away, defense counsel cross-examined Lewis as follows:

"Q. You stated earlier that you did not take [into account] whether or not [the passenger] could drive the car before you decided to impound it?

"A. Yeah, he was under arrest as well.

"Q. Is it true that [the passenger] was arrested after a search of the vehicle?

"A. Yes.

"Q. Before you conducted the inventory search, you did not take into account whether or not [the passenger] could drive the vehicle?

"A. No. It was at that point it wasn't a thought in my mind.

"Q. Why not?

"A. Well, I think it's because I've been doing this job for quite awhile, and I know after completing all the necessary steps until the time of release, or until the detention is over with.

3.

"Q. Do you use your discretion in these situations, do you always impound the vehicle and you never ask whether or not the passenger can drive[] the vehicle?

"A. No, I do that as well.

"Q. In this case you decided not to ask the passenger?

"A. I haven't gotten to that point yet during the time of the contact.

"Q. You never got to that point before the search?

"A. No. I'd be skipping a step if I did that.

"Q. What do you mean, you'd be skipping a step?

"A. Well, if I had asked [the passenger] if he could drive the car prior to finishing my inventory search of the vehicle that would be skipping a step.

"Q. Do you conduct an inventory search before or after you decide to impound the vehicle?

"A. If I'm going to impound the vehicle, I will conduct an inventory search of it.

"Q. At that point you had already decided you were going to impound the vehicle?

"A. Yes.

"Q. Before you searched the vehicle?

"A. Correct.

"Q. Before you made the decision to impound the vehicle you did not check whether or not [the passenger] could drive [the] vehicle?

"A. No, I did not."

Lewis remembered testifying at the preliminary hearing that he searched the vehicle both because he believed defendant was on probation and to conduct an inventory search.

4.

Lewis explained the general policy regarding when to impound a vehicle: "You should impound the vehicle if it's in [a] high crime area or if there's a possibility the vehicle could be broken into or stolen. You should also impound the vehicle if there's nobody there to pick it up. However, if there is somebody there at the scene or somebody close by, reasonable amount of time to take the vehicle, you could do that with the permission of the owner of the vehicle." Lewis said he would not impound every car after making arrests for driving without a license.

Lewis said his inventory search procedure included checking under the hood.

After hearing this testimony, the court took judicial notice that defendant was no longer on probation at the time of the traffic stop.

Defense counsel argued that Lewis should have asked the passenger if he could drive the car. If the passenger could have done so, Lewis would have had no reason to impound the car. Counsel argued that the search was an investigative search, not an impound search, and Lewis conducted it as a ruse to find criminal activity.

The trial court ruled as follows:

"I'll indicate, based on the testimony I heard today, that I do not believe this was a pretext search. [¶] I believe the officer made a valid stop based on the Vehicle Code violation, and the investigation continued based on the defendant driving with a suspended license. [¶] I believe the officer followed the proper procedures and protocol of the Bakersfield Police Department in determining whether to conduct an impound and inventory search.

"There was no evidence presented to the Court that the defendant requested that the officer release his vehicle to the passenger. I don't think the officer's obligated to request that; I think the defendant could have requested it and then the officer could have made a discretionary [decision] whether to agree to that request. In this case there was no evidence that that request was ever made.

"I believe the officer was well within his discretion to impound the vehicle, due to defendant driving with a suspended license. It was during

5.

the course of an impound and inventory, which led to finding the firearm, which led to arrest of both suspects in the vehicle.

"So there was no violation here that would require the Court to suppress the evidence, so the motion is denied."

## DISCUSSION

### I.    *Law*

When we review a trial court's ruling on a suppression motion, we defer to the trial court's factual findings that are supported by substantial evidence. (*People v. Hughes* (2002) 27 Cal.4th 287, 327.) Whether a search is constitutionally reasonable, however, is a legal question upon which we exercise our independent judgment. (*Ibid.*)

The Fourth Amendment guarantees the right to be free of unreasonable searches and seizures by law enforcement personnel. A warrantless search or seizure is presumed to be unlawful. (U.S. Const., 4th Amend.; *Mincey v. Arizona* (1978) 437 U.S. 385, 390.) "The prosecution always has the burden of justifying the search [or seizure] by proving [it] fell within a recognized exception to the warrant requirement." (*People v. Williams* (2006) 145 Cal.App.4th 756, 761 (*Williams*).)

Inventory searches of police-impounded cars are a well-recognized exception to the warrant requirement because they serve "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." (*Colorado v. Bertine* (1987) 479 U.S. 367, 372 (*Bertine*).) Nonetheless, it is well established that inventory searches must not be a "ruse for a general rummaging in order to discover incriminating evidence." (*Florida v. Wells* (1990) 495 U.S. 1, 4; *People v. Williams* (1999) 20 Cal.4th 119, 126.) "'[A]n inventory search conducted pursuant to an unreasonable impound is itself unreasonable.' [Citation.]" (*People v. Torres* (2010) 188 Cal.App.4th 775, 786.) "The purpose behind the decision to impound is crucial because of the reason for condoning inventory searches of impounded cars," which was to secure or protect the car and its contents. (*Id.* at pp. 786-787.)

6.

"The decision to impound the vehicle must be justified by a community caretaking function 'other than suspicion of evidence of criminal activity' [citation] because inventory searches are 'conducted in the absence of probable cause' [citation]." (*People v. Torres*, *supra*, 188 Cal.App.4th. at p. 787.) "Just as inventory searches are exceptions to the probable cause requirement, they are also exceptions to the usual rule that the police officers' '[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.' [Citation.]" (*Ibid.*) "[C]ourts will explore police officers' subjective motivations for impounding vehicles in inventory search cases, even when some objectively reasonable basis exists for the impounding." (*Id.* at pp. 787-788.)

"As part of their '"community caretaking functions,"' police officers may constitutionally impound vehicles that 'jeopardize … public safety and the efficient movement of vehicular traffic.' [Citation.] Whether 'impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft.' [Citation.]" (*Williams*, *supra*, 145 Cal.App.4th at p. 761.) "Nothing … prohibits the exercise of police discretion [in deciding to impound a vehicle] so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." (*Bertine*, *supra*, 479 U.S. at p. 375; see also *South Dakota v. Opperman* (1976) 428 U.S. 364, 375-376.) "[S]tatutory authorization does not, in and of itself, determine the constitutional reasonableness of the [impoundment]." (*Williams*, *supra*, at p. 762.)

## II.     *Analysis*

Defendant first argues that Lewis lacked statutory authority to impound defendant's car because he did not cite or arrest defendant for the Vehicle Code violation before conducting the search; instead, he arrested him after finding the firearm during the search.

Section 14602.6, subdivision (a)(1) provides: "Whenever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked, … the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person …." And section 22651, subdivision (p) provides: "A peace officer … may remove a vehicle located within the territorial limits in which the officer or employee may act, under the following circumstances: [¶] … [¶] (p) When the peace officer issues the driver of a vehicle a notice to appear for a violation of Section 12500 [driving while not holding a valid driver's license], 14601, 14601.1, 14601.2, 14601.3, 14601.4, 14601.5, or 14604 and the vehicle is not impounded pursuant to Section 22655.5.…"

Defendant relies on *United States v. Cervantes* (2012) 703 F.3d 1135, where the court noted that it was not clear the officers complied with the relevant impound statutes because they did not arrest the defendant until narcotics were discovered during the inventory search. (*Id.* at pp. 1142-1143.)[2]

We believe, however, that the trial court in this case was justified in drawing the reasonable inference that Lewis intended to cite or arrest defendant for driving with a suspended or revoked license and would have done so. Lewis testified that he decided to impound defendant's car because defendant was driving with a suspended or revoked license. The reasonable inference was that Lewis would have cited or arrested defendant for that violation either before or after the inventory search. The sequence of the two events does not seem significant in this case. The inference that Lewis intended to cite or

---

[2]      We note that although California courts are bound by the decisions of the United States Supreme Court interpreting the federal Constitution, they are not bound by the decisions of lower federal courts, even on federal questions. Such decisions are persuasive and entitled to great weight, but they do not bind California courts. (*People v. Bradley* (1969) 1 Cal.3d 80, 86.)

8.

arrest is further supported by the lack of any evidence that Lewis expected to uncover evidence of a crime inside the car. (See *People v. Burch* (1986) 188 Cal.App.3d 172, 175, 180 [officer testified he intended to cite the defendant for the suspended license and therefore conducted an inventory search of the car prior to impounding it; during the inventory, the officer discovered methamphetamine, and the defendant was arrested for possession of a controlled substance; court noted in upholding the inventory search that there was no credible evidence the inventory search was simply a ruse to justify an investigatory search for criminal evidence].)

Defendant asserts there was no evidence Lewis actually inventoried the items he found during the search. Defendant claims "no inventory was produced" and Lewis was simply searching the car for evidence. But this claim is contrary to the record: Lewis testified that he conducted an inventory, checking items inside and outside the car and under the hood, and that he did not expect to find evidence of a crime.

Next, defendant argues Lewis did not follow departmental policy, which, according to defendant, "was to impound the car if the car was unsafe to remain where it was and no one was available to drive it away." Defendant places great weight on Lewis's failure to determine whether defendant's passenger could have driven the car away. But Lewis's testimony, quoted above, demonstrates that the department's policy for impounding did not include a requirement that no one else could drive the car away. Specifically, Lewis testified: "[I]f there is somebody there at the scene or somebody close by, reasonable amount of time to take the vehicle, *you could do that* with the permission of the owner of the vehicle." (Italics added.) The obvious inference is that the policy gives the officer discretion in making this determination.

Furthermore, we are not persuaded by the cases defendant cites to support his argument that Lewis's decision to impound the car required that he first determine the passenger could not drive the car away. In *People v. Benites* (1992) 9 Cal.App.4th 309 (*Benites*), the officer impounded a van after learning the driver and passenger both had

9.

suspended licenses. (*Id.* at p. 315.) The court upheld the subsequent inventory search because the officer's decision to impound was reasonable under the circumstances: It was "very late at night," the van was on "a dark, lonely and isolated stretch of road" where it "could be vandalized," "the passenger also lacked a valid license," and "there was the possibility that [the defendant] would simply drive off once [the officer] left." (*Id.* at p. 326.) The court noted, "the officer's discretion to impound [was] clearly based on factors other than using it as a pretext to engage in a search for criminal activity." (*Id.* at p. 327.)

In *People v. Steeley* (1989) 210 Cal.App.3d 887 (*Steeley*), the police officer cited the defendant for driving with a revoked license and impounded the car. (*Id.* at pp. 889-890.) The court upheld the subsequent inventory search: "It was not unreasonable for [the officer] to conclude that the appropriate way to protect the vehicle was impoundment," as "there was no other licensed driver, the car was blocking a driveway and [the defendant] was not the registered owner of the vehicle." (*Id.* at p. 892.)

The version of section 22651, subdivision (p) in effect at the time of the impoundments in *Benites* and *Steeley* (and other cases like them) stated that an officer was authorized to impound a vehicle "[w]hen the peace officer issues the driver of a vehicle a notice to appear for a violation of Section 12500, 14601, 14601.1, 14601.2 *and there is no passenger in the vehicle who has a valid driver's license and authorization to operate the vehicle*." (Italics added.) In 1994, however, legislation eliminated the no-passenger requirement (Stats. 1994, ch. 1221, §§ 16, 17) and since 1995, the statute has authorized officers to impound a vehicle "[w]hen the peace officer issues the driver of a vehicle a notice to appear for a violation of Section 12500, 14601, 14601.1, 14601.2, 14601.3, 14601.4, 14601.5, or 14604 *and the vehicle is not impounded pursuant to Section 22655.5* [impoundment of motor vehicle by peace officer with probable cause to believe vehicle used as means to commit public offense or is evidence or contains evidence of crime].…" (§ 22651, subd. (p), italics added.) In other words, a violation of

section 12500, for example, authorizes an officer to impound the vehicle pursuant to section 22651, subdivision (p), regardless of whether the vehicle's passengers are able to legally drive the vehicle away.

Lewis was not obligated by department policy, by statute, or by the Fourth Amendment to determine whether defendant's passenger could drive the car away. "The fact that there may be less intrusive means of protecting a vehicle and its contents does not render the decision to impound unreasonable." (*Steeley*, *supra*, 210 Cal.App.3d at p. 892.)[3]

Finally, defendant states that the impoundment did not serve a community caretaking function because "the decision to impound should be limited to situations when no other reasonable alternative exists, such as a passenger able to drive the car away." As we have said, this is not correct. Moreover, Lewis testified that the car was in a neighborhood of high property crime. For this reason, his removal of the car served a community caretaking function.

In sum, we cannot conclude the decision to impound the car was unreasonable. Substantial evidence supported the findings that Lewis's decision to impound followed departmental procedure, served a community caretaking function, and was not merely a ruse for conducting an improper investigatory search. Accordingly, the trial court did not err in denying the motion to suppress evidence of the firearm.

## DISPOSITION

The judgment is affirmed.

---

[3] For the reasons we have discussed above, we need not address defendant's argument that Lewis misunderstood the appropriate sequence of determining whether the passenger could drive the car away and whether the car should be impounded.