Filed 3/22/16  P. v. Murillo CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PORFIRIO LEONEL MURILLO et al.,<br><br>    Defendants and Appellants. | B257233<br><br>(Los Angeles County<br>Super. Ct. No. LA077362) |

APPEAL from judgments of the Superior Court of Los Angeles County, Joseph A. Brandolino, Judge.  Reversed and remanded with directions.

Carlos Ramirez, under appointment by the Court of Appeal, for Defendant and Appellant Porfirio Murillo.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant Daniel Valdez.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendants and appellants Porfirio Leonel Murillo and Daniel Valdez pleaded no contest to carrying a loaded, unregistered firearm; Murillo additionally pleaded no contest to possession of a firearm by a felon and possession of a controlled substance, methamphetamine, with a firearm. Both were placed on probation. Appellants contend the trial court erred by denying their suppression motions.[1] We agree.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The suppression motions*

After police officers found Murillo and Valdez in possession of a bag containing a handgun, and methamphetamine in Murillo's pocket, the men were arrested and charged with the aforementioned offenses. Appellants moved to suppress evidence obtained during their encounter with the officers pursuant to Penal Code section 1538.5.[2]

a. *Evidence*

Viewed in the light most favorable to the trial court's ruling (*People v. Davis* (2005) 36 Cal.4th 510, 528-529), the following relevant evidence was adduced at the hearing on the suppression motion.

On March 31, 2014, at approximately 7:10 p.m., Los Angeles Police Department (L.A.P.D.) Officer Jacob Palacios and his partner, Officer Urbina, were on foot patrol in a "huge" North Hollywood apartment complex that covered a city block and was enclosed by a fence. Other officers were patrolling inside the apartment building. The area was plagued by narcotics and gang activity, and there were "a lot of gang members in [the] complex." Three to four weeks earlier, Palacios had met with the owner and the manager of the complex and discussed their "zero tolerance" policy toward trespassers. A city

---

[1] Counsel for appellant Valdez initially filed an opening brief which raised no issues, and requested this court to conduct an independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 441. On January 23, 2015, counsel requested to join in the issue raised in appellant Murillo's opening brief. The People thereafter filed an opposition brief addressing appellants' contentions. In light of Valdez's request and our resolution of the issues, the *Wende* request is moot.

[2] All further undesignated statutory references are to the Penal Code.

abatement order regarding trespassing had been issued to the complex. No trespassing signs were posted at the front and rear of the complex, as well as on the gates and nearby alley walls.

Palacios checked a rear alley area inside the fenced complex, where gang activity had been observed. He saw Valdez, Murillo, and a third man, Brian Colon, seated together in an exterior stairwell located inside the fenced complex. Colon and Valdez were at the top of the stairs, and Murillo was seated just below them. Valdez was wearing a red hat, which was consistent with gang attire worn by North Hollywood Locos gang members. A no trespassing sign was posted nearby. Palacios had encountered Valdez and Murillo previously, and knew they were not residents of the apartment complex.

Palacios asked the three men if they lived at the complex; they said no. They did not say they had been invited onto the property or were visiting friends. Palacios did not ask whether they had permission to be on the property. Palacios ordered the men to come down to him, and they complied. They left a Gatorade bottle and a black and blue bag at the top of the stairwell where they had been sitting.

Palacios spoke to and detained the men at the bottom of the stairwell on suspicion of trespassing. He radioed another officer, L.A.P.D. Sergeant Guttilla, to alert him of the detention. After speaking with Murillo, Valdez, and Colon, Palacios determined that the men "were all going to be arrested for trespassing." Murillo spontaneously volunteered that he was on probation. Urbina asked whether Murillo had anything illegal on his person. Murillo replied that he had narcotics. Officer Urbina searched Murillo's person and recovered a small clear baggie from his pocket. Murillo said the substance in the baggie was "meth."

While Palacios was speaking to the men at the bottom of the stairwell, Guttilla and another officer arrived at the second floor landing. Approximately 35 seconds after Murillo, Valdez, and Colon walked down the stairs, Guttilla picked up the bag where it sat on the second floor, examined its contents, and signaled to Palacios that it contained a

3

gun. Palacios thereafter also looked in the bag and observed a loaded blue steel revolver inside.

Officers transported Murillo to the police station in a police car. Valdez was also arrested. Colon was cited for misdemeanor trespassing and released.

A time-stamped surveillance tape showed that just prior to the incident, the men were among a group of six men walking westbound in the alley. They entered the apartment complex through a gate that had been propped open. Initially, Valdez was carrying the bag. Murillo, Valdez, and Colon climbed to the top of the stairwell and sat down. Murillo carried the bag up the stairs and placed it on the ground. The men remained at the top of the stairwell for approximately 10 minutes before the encounter with the officers.

It was undisputed that the officers had neither a warrant nor consent to search the bag.

b. *Ruling*

The People argued that, once Palacios discovered Valdez and Murillo were not residents, he had probable cause to arrest them, and the search of the bag was permissible as a search incident to arrest. Alternatively, the bag would have been subject to an inventory search when Murillo was booked, and therefore suppression was not required under the inevitable discovery doctrine. Appellants argued that Palacios lacked probable cause to arrest them for trespassing; the search was not a valid search incident to arrest because the bag was out of their reach; and the inevitable discovery doctrine was inapplicable because Colon, who was not arrested, could have taken custody of the bag.

The trial court denied the motion. It reasoned that Valdez and Murillo had a reasonable expectation of privacy in the bag because both had handled and carried it. Palacios had probable cause to arrest Valdez for trespassing and Murillo for trespassing and possession of methamphetamine. The search was not a lawful search incident to arrest, because the bag was at the top of the stairs and not within appellants' immediate reach. However, because appellants were arrested, the officers had a duty to safeguard

4

the bag, which appeared to be their property.  Because the bag would have been subject to an inventory search, the inevitable discovery doctrine applied.

2. *Procedure*

After the trial court denied the suppression motions, Murillo pleaded no contest to carrying a loaded, unregistered firearm (§ 25850, subd. (a)); possession of a firearm by a felon (§ 29800, subd. (a)(1)); and possession of a controlled substance, methamphetamine, while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a)).  Murillo also admitted a prior conviction for receiving stolen property (§ 496, subd. (a)).  The trial court suspended imposition of sentence and placed Murillo on formal probation for a period of three years on condition, inter alia, that he serve 364 days in county jail.  It imposed a restitution fine, a suspended probation revocation restitution fine, a court operations assessment, and a criminal conviction assessment.

Valdez pleaded no contest to carrying a loaded, unregistered firearm.  (§ 25850, subd. (a).)  On Valdez's motion, the offense was reduced to a misdemeanor.  The trial court suspended imposition of sentence and placed Valdez on summary probation for a period of three years on condition, inter alia, that he complete 20 days of community labor, with credit for 9 days completed.  It imposed a restitution fine, a suspended probation revocation restitution fine, a court operations assessment, and a criminal conviction assessment.

Murillo and Valdez appeal.

DISCUSSION

1. *Standard of review*

The Fourth Amendment guarantees the right to be free of unreasonable searches and seizures by law enforcement personnel.  (U.S. Const., 4th Amend.; *People v. Rogers* (2009) 46 Cal.4th 1136, 1156.)  When reviewing a trial court's ruling on a suppression motion, we defer to the trial court's express or implied factual findings if they are supported by substantial evidence, but exercise our independent judgment to determine whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment.  (*People v. Suff* (2014) 58 Cal.4th 1013, 1053; *Robey v. Superior Court*

5

(2013) 56 Cal.4th 1218, 1223.)  Challenges to the admissibility of a search or seizure must be evaluated solely under federal constitutional standards.  (*Robey v. Superior Court, supra,* at p. 1223; *People v. Lenart* (2004) 32 Cal.4th 1107, 1118.)  A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for it.  (*People v. Suff, supra,* at p. 1053; *People v. Redd* (2010) 48 Cal.4th 691, 719.)  If there is a legitimate reason for a search or seizure, an officer's subjective motivation is generally irrelevant.  (*Whren v. United States* (1996) 517 U.S. 806, 811–813; *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 144; *People v. Evans* (2011) 200 Cal.App.4th 735, 742.)  We will affirm the trial court's ruling if it is correct on any theory of law applicable to the case.  (*People v. Evans, supra,* at p. 742.)

    2.  *Application here*

The trial court determined, based on the videotape showing both Valdez and Murillo carrying the bag at different times, that both had a reasonable expectation of privacy and could move to suppress.  The People do not challenge this ruling.

The initial detention of appellants was lawful, and they do not contend otherwise. " ' "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." [Citation.]' " (*People v. Suff, supra,* 58 Cal.4th at pp. 1053-1054; *People v. Bennett* (1998) 17 Cal.4th 373, 386-387 [officers may "temporarily detain a suspect based only on a 'reasonable suspicion' that the suspect has committed or is about to commit a crime"]; *In re H.M.* (2008) 167 Cal.App.4th 136, 142.) Palacios knew, from previous encounters with appellants, that neither lived at the apartment complex.  Their presence inside the fenced property provided reasonable suspicion for the detention.

Substantial evidence also supported the trial court's conclusion that there was probable cause to arrest both appellants.  Probable cause to arrest exists if facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that an individual is guilty of a crime.  (*People v. Kraft*

6

(2000) 23 Cal.4th 978, 1037; *In re J.G.* (2010) 188 Cal.App.4th 1501, 1506.) When an officer has probable cause to believe that an individual has committed even a minor criminal offense in his or her presence, the subject's arrest does not offend the Fourth Amendment. (*Virginia v. Moore* (2008) 553 U.S. 164, 171, 178; *Atwater v. Lago Vista* (2001) 532 U.S. 318, 354; *People v. McKay* (2002) 27 Cal.4th 601, 607; *People v. Gomez* (2004) 117 Cal.App.4th 531, 538-539.) Officer Palacios had probable cause to believe appellants were committing the offense of trespassing. (See § 602.8, subd. (a) ["Any person who without the written permission of the landowner, the owner's agent, or the person in lawful possession of the land, willfully enters any lands . . . enclosed by fence, belonging to, or occupied by, another . . . is guilty of a public offense"].) Appellants admitted they were not residents of the apartment complex.[3] They were not accompanied by a resident of the complex, nor did they state that they were on the premises with permission or by invitation. (Cf. *In re Humberto O.* (2000) 80 Cal.App.4th 237, 242 [probable cause to arrest juvenile for truancy existed when, inter alia, juvenile confirmed he attended school and failed to offer an excuse for being out of school during school hours].) The complex was fenced, and no trespassing signs were displayed near the stairwell. There was therefore probable cause to arrest appellants.[4]

As the trial court found, the search of the bag was not a valid search incident to arrest, however. It is settled that an officer may lawfully conduct a warrantless search of an arrestee's person, and the area within his or her immediate control, that is, the area

---

[3] Palacios's on-the-scene questioning of appellants was lawful despite the absence of *Miranda* advisements. (*Miranda v. Arizona* (1966) 384 U.S. 436.) *Miranda* advisements are required only when a person is subjected to custodial interrogation, not a detention. (*People v. Tully* (2012) 54 Cal.4th 952, 982-983; *People v. Davidson* (2013) 221 Cal.App.4th 966, 970-971.)

[4] Of course, Murillo admitted possessing methamphetamine, and methamphetamine was discovered in his pocket, a circumstance that provided an alternative ground for his arrest. The record is not entirely clear as to whether the bag was searched before or after discovery of the methamphetamine, however. Therefore we do not consider the discovery of the methamphetamine in analyzing the reasonableness of the search of the bag.

into which the arrestee might reach to retrieve a weapon or destroy evidence. (*Chimel v. California* (1969) 395 U.S. 752, 763; *People v. Diaz* (2011) 51 Cal.4th 84, 90, disapproved on another ground by *Riley v. California* (2014) __ U.S. __ [134 S.Ct. 2473]; *People v. Evans, supra,* 200 Cal.App.4th at pp. 744-745.)[5] A search incident to arrest may immediately precede the actual arrest, as long as there is probable cause to arrest before the search occurred. (*Rawlings v. Kentucky* (1980) 448 U.S. 98, 111; *People v. Avila* (1997) 58 Cal.App.4th 1069, 1076-1077.) The search incident to arrest exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. (*People v. Evans, supra,* at p. 744.) Here, as the trial court found, the bag was not in appellants' reach when they were arrested. They were on the ground level, at the bottom of the stairwell; the bag was at the top of a flight of stairs. The People do not challenge this conclusion.

Instead, the People contend, and the trial court found, that suppression was not required under the inevitable discovery doctrine. The People's theory is as follows. The

---

[5] Under some circumstances, the "immediate area" may be more broadly defined. "A different rule of reasonableness applies when the police have a degree of control over a suspect but do not have control of the entire situation. In such circumstances—e.g., in which third parties known to be nearby are unaccounted for, or in which a suspect has not yet been fully secured and retains a degree of ability to overpower the police or destroy evidence—the Fourth Amendment does not bar the police from searching the immediate area of the suspect's arrest as a search incident to an arrest." (*People v. Leal* (2009) 178 Cal.App.4th 1051, 1060; see *People v. Summers* (1999) 73 Cal.App.4th 288, 290-291 [officer reasonably searched bed where arrestee had been sleeping, even though arrestee was handcuffed and being escorted from trailer by another officer, where one of the arrestee's roommates was in the vicinity but unaccounted for, and another was present and free of police control].) Here, appellants and Colon were standing at the bottom of the flight of stairs, and the bag was at the top, when the search occurred. Even if the definition of "immediate area" could be stretched to reach the top of the stairs when officers face a fluid and uncontrolled situation, such was not the case here. At least three officers were on the scene, appellants and Colon were cooperative and noncombative, and no other persons associated with the trio were known to be unaccounted for. Most significantly, Palacios did not testify that Guttilla searched the bag as a safety precaution. The area at the top of the stairs cannot be considered to be in appellants' immediate control.

8

officers had a duty, pursuant to their "community caretaking function," to safeguard the property of persons whom they arrest. Therefore, they would have been required to take the bag to the police station for safekeeping, rather than leave it lying at the top of the stairs. At the police station, the bag would have been subject to an inventory or booking search, and the gun would inevitably have been discovered.

Under the inevitable discovery doctrine, illegally seized evidence is admissible if "it would have been discovered by the police through lawful means." (*People v. Robles* (2000) 23 Cal.4th 789, 800; *People v. Superior Court (Chapman)* (2012) 204 Cal.App.4th 1004, 1021.) The doctrine is " 'an extrapolation from the independent source doctrine: *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.' [Citation.] The purpose of the inevitable discovery rule is to prevent the setting aside of convictions that would have been obtained without police misconduct. [Citation.]" (*People v. Robles, supra,* at p. 800; *Nix v. Williams* (1984) 467 U.S. 431, 442-444, 447; *People v. Hughston* (2008) 168 Cal.App.4th 1062, 1071.) The People have the burden of establishing that illegally seized evidence is admissible under the inevitable discovery rule. (*People v. Robles, supra,* at pp. 800-801.) To establish inevitable discovery, the prosecution "must demonstrate by a preponderance of the evidence that, due to a separate line of investigation, application of routine police procedures, or some other circumstance," the unlawfully seized evidence "would have been discovered by lawful means." (*People v. Hughston*, *supra,* at p. 1072.) In analyzing whether the exception applies, we must determine whether, viewing the circumstances as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred. (*Ibid.*)

Had appellants *not* been accompanied by Colon, or had Colon also been arrested, the answer to this question would be fairly simple. Police officers have a duty to ensure that an arrestee's property is safeguarded from theft. (*People v. Scigliano* (1987) 196 Cal.App.3d 26, 29-30.) "The duty to protect an arrestee's property falls within the officer's 'community caretaking function' . . . ." (*Id.* at p. 29.) A routine inventory of the

belongings of an arrestee who will be incarcerated is lawful. (*Illinois v. Lafayette* (1983) 462 U.S. 640, 646-648; *People v. Clark* (1992) 3 Cal.4th 41, 142-143; *People v. Hamilton (*1988) 46 Cal.3d 123, 137-138; *In re Angel R.* (2008) 163 Cal.App.4th 905, 909-910; *People v. Ingham* (1992) 5 Cal.App.4th 326, 332.) Here, the officers could not leave the bag lying unattended at the top of the stairs in the apartment complex. It could have contained valuable or dangerous items, and the officers would have been remiss leaving it lying about. (See *People v. Scigliano, supra,* at p. 30 [had defendant been arrested with expensive property in his possession, "the officer would have had a duty to provide for its safekeeping and not simply leave it at the arrest site"].) Had the bag been taken to the police station for safekeeping, booking officers would undoubtedly have inventoried it pursuant to routine police procedures and the gun inevitably would have been found.

However, "[a] number of courts have recognized that the possibility someone would have removed or destroyed the evidence at issue undermines a showing of inevitability." (*People v. Hughston, supra,* 168 Cal.App.4th at p. 1073.) In *Hughston,* the defendant sold drugs at a music festival from his rented Hummer automobile, which he had parked at a fairgrounds campsite. He and his friends had enclosed the Hummer in a tent-like structure, and used the structure as a place to stay during the three-day festival. (*Id.* at pp. 1064-1065, 1069.) After an undercover agent observed Hughston make hand-to-hand drug sales, Hughston was detained and his backpack was searched; upon discovering drugs therein, the agent arrested Hughston. Officers then located and searched the Hummer, discovering large quantities of drugs inside. (*Id.* at pp. 1066-1067.) The People contended that even if the Hummer was unlawfully searched, the inevitable discovery exception applied. The appellate court disagreed. There was no evidence that, absent the search, Hughston's companions would have abandoned the Hummer and its illegal cargo. (*Id.* at pp. 1071, 1073-1074.) Moreover, the People provided no evidence that Hughston's companions "would not have gained access to the interior of the Hummer and removed or destroyed the drugs." (*Id.* at p. 1073.)

10

Similarly, in *People v. Bennett, supra,* 17 Cal.4th 373, a majority of our Supreme Court rejected the view of a concurring justice that the inevitable discovery doctrine applied. *Bennett* explained: "Justice Brown would resolve this case under the 'inevitable discovery' doctrine [citation], reasoning that police officers would inevitably have discovered the rifle in petitioner's motel room regardless of whether their initial seizure of that room was valid. She acknowledges that such a discovery would not truly have been inevitable because, absent the seizure, petitioner's father might have removed the rifle before the police discovered it; nonetheless, she concludes that the inevitable discovery doctrine applies because 'there is no constitutional right to destroy evidence.' [Citation.] To arrive at this result, however, Justice Brown must sail in uncharted waters. We do not know of any decision holding that the prosecution may resort to the inevitable discovery doctrine to prevent suppression of illegally seized evidence when, as here, a defendant could have caused the removal or destruction of the evidence." (*Id.* at p. 392, fn. 7.)

As in these cases, discovery of the gun was not inevitable. Had Sergeant Guttilla not searched the bag, the bag would not necessarily have been taken to the police station, because appellants' companion, Colon, could have taken custody of it instead. The People had the burden of proof on this issue, and they failed to present any evidence suggesting Colon would have refused to take the bag or would have departed the scene prior to his companions' arrest. No evidence suggested that appellants did not wish to leave Colon with the bag, or any other fact suggesting leaving the bag with Colon was not an option. We simply do not know what would have happened if the search of the bag had not occurred. Yet the People had the burden to show, based on demonstrated historical facts rather than speculation, that the gun would have been discovered by lawful means. (*People v. Boyer* (2006) 38 Cal.4th 412, 449; *People v. Robles, supra,* 23 Cal.4th at pp. 800-801; *People v. Hughston, supra,* 168 Cal.App.4th at p. 1072.) On appeal, the People fail to provide authority or persuasive argument supporting their contention that discovery of the gun was inevitable. They offer only the conclusory argument that even if Sergeant Guttilla had not inspected the bag, the officers would have

11

taken it for safekeeping and therefore, "even though Colon was released, he would not have been able to retrieve the bag." They fail to explain the basis for this conclusion.

Because the People failed to establish that the gun would inevitably have been discovered, appellants' suppression motions should have been granted insofar as they pertained to the gun.[6]

DISPOSITION

The judgments are reversed and the matter is remanded to the superior court. The court is directed to vacate the no contest pleas if appellants make the appropriate motions within 30 days after the remittitur issues. In that event, the superior court should reinstate the original charges contained in the information if the prosecution so moves, and proceed to trial or other appropriate disposition. If no timely motions to vacate the no contest pleas are filed by appellants, the court is directed to reinstate the original judgments.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.


We concur:



EDMON, P. J.



LAVIN, J.

---

[6] Appellant Murillo does not argue, and has not established, that his statements to officers or the methamphetamine found in his pocket were the result of an unreasonable search or seizure. Insofar as his motion to suppress concerned this evidence, it was properly denied.

12